**No. 26-10312**

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

MICHAEL LEWELLEN,

*Plaintiff-Appellant*,

v.

TODD WALLACE BLANCHE, Acting U.S. Attorney General,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas
No. 4:25-cv-30 (O'Connor, C.J.)

## OPENING BRIEF OF APPELLANT MICHAEL LEWELLEN

Dated: July 1, 2026

Cameron T. Norris
David J. Wenthold
Zachary P. Grouev
CONSOVOY MCCARTHY, PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
dwenthold@consovoymccarthy.com
zach@consovoymccarthy.com

J. Abraham Sutherland
106 Connally Street
Black Mountain, NC 28711
(805) 689-4577

*Counsel for Appellant Michael Lewellen*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court can evaluate possible disqualification or recusal:

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Michael Lewellen | Cameron T. Norris of Consovoy McCarthy, PLLC |
| | David J. Wenthold of Consovoy McCarthy, PLLC |
| | Zachary Grouev of Consovoy McCarthy, PLLC |
| | J. Abraham Sutherland |

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Todd Blanche, Acting U.S. Attorney General | Najib Gazi of U.S. Attorney's Office Dallas, TX |

*/s/Cameron T. Norris*
Counsel for Appellant

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. This case presents important questions about when plaintiffs can bring preenforcement challenges to criminal statutes. And the answer here has major implications for protected expression and innovation in an important and developing industry: cryptocurrency.

# TABLE OF CONTENTS

Certificate of Interested Persons .......................................................................................i

Statement Regarding Oral Argument....................................................................................ii

Table of Authorities..............................................................................................iv

Introduction ...............................................................................................1

Jurisdictional Statement...............................................................................2

Statement of the Issues ................................................................................2

Statement of the Case....................................................................................2

    I.  Lewellen creates new cryptocurrency software, called Pharos, that he wants to publish. ............................................................................................3

    II.  The Justice Department reads the unlicensed-money-transmitting statute to cover software publishers like Lewellen and prosecutes them. ...........................5

    III. Lewellen brings this preenforcement action seeking relief that lets him publish his software; but after a change in presidential administration, the district court dismisses for lack of standing. ............................................................10

Summary of the Argument.............................................................................13

Argument.........................................................................................................14

    I.  Lewellen's complaint plausibly alleges standing to bring a preenforcement challenge to 18 U.S.C. §1960. .......................................................................15

        A.  Lewellen's planned publication of Pharos is arguably protected. ............16

        B.  Lewellen's planned publication of Pharos is arguably proscribed by §1960.........................................................................................................18

        C.  If Lewellen published Pharos, he would face a credible threat of enforcement.......................................................................................19

    II. There are no other viable objections to the district court's jurisdiction.............28

        A.  This suit is not moot. ...........................................................................29

        B.  This suit is ripe. ...................................................................................30

        C.  Sovereign immunity does not bar this suit. ............................................32

Conclusion ......................................................................................................35

Certificate of Compliance .............................................................................36

Certificate of Service......................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Abraugh v. Altimus,*
26 F.4th 298 (5th Cir. 2022)...............................................................................28

*Apter v. HHS,*
80 F.4th 579 (5th Cir. 2023).......................................................................... 33, 34

*Barilla v. City of Houston,*
13 F.4th 427 (5th Cir. 2025)........................................... 14, 15, 16, 18, 20

*Bear Creek Bible Church v. EEOC,*
571 F. Supp. 3d 571 (N.D. Tex. 2021) ...............................................................34

*Block v. Canepa,*
74 F.4th 400 (6th Cir. 2023)........................................................................... 20, 22

*Braidwood Mgmt. v. EEOC,*
70 F.4th 914 (5th Cir. 2023)............................................ 1, 15, 17, 20, 22, 30, 31, 32, 34

*Bryant v. Woodall,*
1 F.4th 280 (4th Cir. 2021).................................................................................27

*Canna Provisions, Inc. v. Garland,*
738 F. Supp. 3d 111 (D. Mass. 2024) .................................................................22

*Cayuga Nation v. Tanner,*
824 F.3d 321 (2d Cir. 2016) ...............................................................................19

*Chamber of Com. v. Reich,*
74 F.3d 1322 (D.C. Cir. 1996) ...........................................................................33

*Contender Farms v. USDA,*
779 F.3d 258 (5th Cir. 2015) ..............................................................................31

*Contra Sacks v. OFAC,*
466 F.3d 764 (9th Cir. 2006)...............................................................................25

*Crown Castle Fiber v. City of Pasadena,*
76 F.4th 425 (5th Cir. 2023)...............................................................................32

*Ctr. for Individual Freedom v. Carmouche,*
449 F.3d 655 (5th Cir. 2006) ..............................................................................15

*Dalton v. Specter,*
511 U.S. 462 (1994) ...........................................................................................33

*Di Angelo Publ'ns v. Kelley,*
9 F.4th 256 (5th Cir. 2021)................................................................................14

*FBI v. Fikre*,
  601 U.S. 234 (2024) ..............................................................................................29

*FCC v. Fox Television Stations*,
  567 U.S. 239 (2012) ..............................................................................................23

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) .................................................................................25

*Fischer v. Thomas*,
  176 F.4th 470 (6th Cir. 2026) ...............................................................................25

*Franciscan All. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) ..................................................................21, 26, 27

*Friends of the Earth v. Laidlaw Env't Servs.*,
  528 U.S. 167 (2000) ..............................................................................................30

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ................................................................................29

*Gulfport Energy v. FERC*,
  41 F.4th 667 (5th Cir. 2022) .................................................................................31

*Inst. for Free Speech v. Johnson*,
  148 F.4th 318 (5th Cir. 2025) .............................................. 16, 17, 21, 25, 27

*Kucharek v. Hanaway*,
  902 F.2d 513 (7th Cir. 1990) ................................................................................27

*La Union Del Pueblo Entero v. Abbott*,
  151 F.4th 273 (5th Cir. 2025) ..............................................................16, 21, 25

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) ..............................................................................................33

*Lee v. Verizon Commc'ns*,
  837 F.3d 523 (5th Cir. 2016) ................................................................................14

*Lexmark Int'l v. Static Control Components*,
  572 U.S. 118 (2014) ..............................................................................................34

*LIA Network v. City of Kerrville*,
  163 F.4th 147 (5th Cir. 2025) ...................................................................... 16, 21

*Lowe v. Ingalls Shipbuilding*,
  723 F.2d 1173 (5th Cir. 1984) ..............................................................................34

*McCall v. Dretke*,
  390 F.3d 358 (5th Cir. 2004) ................................................................................32

*MedImmune, Inc. v. Genentech*,
  549 U.S. 118 (2007) ........................................................................ 15, 16, 30, 32

*N.H. Lottery Comm'n v. Rosen*,
  986 F.3d 38 (1st Cir. 2021) ........................................................................... 17, 30

*Nat'l Ass'n for Gun Rights v. Garland*,
  741 F. Supp. 3d 568 (N.D. Tex. 2024) ................................................................27

*Nat'l Org. for Marriage v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ................................................................................28

*Nat'l Press Photographers Ass'n v. McCraw*,
  90 F.4th 770 (5th Cir. 2024) ...............................................................................16

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ...............................................................................14

*Pena v. Rio Grande City*,
  879 F.3d 613 (5th Cir. 2018) ...............................................................................28

*Pool v. City of Houston*,
  978 F.3d 307 (5th Cir. 2020) ...............................................................................30

*Rogers v. Bryant*,
  942 F.3d 451 (8th Cir. 2019) ...............................................................................27

*Sanchez v. Torrez*,
  173 F.4th 1202 (10th Cir. 2026) .........................................................................19

*Sandvig v. Barr*,
  451 F. Supp. 3d 73 (D.D.C. 2020) ......................................................................27

*Sandvig v. Sessions*,
  315 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................23

*SBA List v. Driehaus*,
  573 U.S. 149 (2014) ...........................................................................15, 16, 17

*SFFA v. Univ. of Tex. at Austin*,
  142 F.4th 819 (5th Cir. 2024) .............................................................................28

*Speech First v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) .............................................18, 20, 21, 24, 26

*Texas v. DHS*,
  88 F.4th 1127 (5th Cir. 2023) .............................................................................34

*Triland Holdings & Co. v. Sunbelt Serv. Corp.*,
  884 F.2d 205 (5th Cir. 1989) ...............................................................................28

*Trinity Lutheran v. Comer*,
　582 U.S. 449 (2017) .................................................................................................29

*Turtle Island Food v. Strain*,
　65 F.4th 211 (5th Cir. 2023)..............................................................18, 25, 27

*Umphress v. Hall*,
　133 F.4th 455 (5th Cir. 2025)........................................................... 24, 30

*Van Loon v. Dep't of Treasury*,
　122 F.4th 549 (5th Cir. 2024) ........................................................... 3, 4, 5

*Virden v. City of Austin*,
　127 F.4th 960 (5th Cir. 2025).................................................................3

*Vt. Right to Life Comm. v. Sorrell*,
　221 F.3d 376 (2d Cir. 2000) ............................................................. 25, 27

*Whitman v. Am. Trucking Ass'ns*,
　531 U.S. 457 (2001) .................................................................................34

*Woodlands Pride v. Paxton*,
　168 F.4th 293 (5th Cir. 2026).................................................................20

**Statutes**

18 U.S.C. §1960 ...................................................................................*passim*

18 U.S.C. §3231 .........................................................................................35

28 U.S.C. §509 ...........................................................................................35

28 U.S.C. §510 ...........................................................................................35

28 U.S.C. §1291 ...........................................................................................2

28 U.S.C. §1331 ...........................................................................................2

31 U.S.C. §5330 ......................................................................... 5, 6, 7, 18

5 U.S.C. §551 .............................................................................................34

5 U.S.C. §702 ...................................................................................... 33, 34

**Regulations**

31 C.F.R. §1010.100...................................................................................7

**Other Authorities**

13B Wright & Miller, Fed. Practice & Procedure §3532.5 (3d ed. 1998) ......................15

*Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies*, FIN-2019-G001 (May 9, 2019), perma.cc/8M5Z-QY2D............................7

*Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN2013-G001 (Mar. 18, 2013), perma.cc/5WCK-BLGF ........................ 8

*Application of FinCEN's Regulations to Virtual Currency Software Development and Certain Investment Activity*, FIN-2014-R002 (Jan. 30, 2014), perma.cc/4B2Q-XKEV ............. 8

*Ending Regulation by Prosecution* (Apr. 7, 2025), perma.cc/48LS-XGXP ..................... *passim*

*Fact Sheet: The CLARITY Act Protects Software Developers While Promoting Responsible DeFI Innovation*, Committee on Banking, Housing, & Urban Affairs (Jan. 13, 2026), perma.cc/4Z6G-2ZKW ................................................................................................ 19

Mayer, *Regulating Charitable Crowdfunding*, 97 IND. L.J. 1375, 1413 (2022) ........................ 3

SEC Comm'r Peirce, *Remarks at the IC3 Blockchain Camp: Base Case* (June 2, 2026), perma.cc/9TU3-GELS ............................................................................................... 17

Sens. Lummis & Wyden, *Re: Money Transmitting Business Registration and Non-Custodial Crypto Asset Software* (May 9, 2024), perma.cc/9AKY-PZRX ................................... 10

Tabarrok, *The Private Provision of Public Goods via Dominant Assurance Contracts*, 96 Pub. Choice 345 (1998) ..................................................................................................... 4

*United States v. Rodriguez,*
    Doc.4, No. 24-cr-82 (S.D.N.Y. Feb. 14, 2024) ........................................................ 9, 20

*United States v. Rodriguez,*
    Doc.86, No. 24-cr-82 (S.D.N.Y. May 5, 2025) ............................................................. 9

*United States v. Rodriguez,*
    Doc.118, No. 24-cr-82 (S.D.N.Y. June 26, 2025) ............................... 12, 18, 20, 23, 34

*United States v. Rodriguez,*
    Doc.160, No. 24-cr-82 (S.D.N.Y. Nov 6, 2025) ......................................................... 11

*United States v. Sterlingov,*
    Doc.66, No. 21-cr-399 (D.D.C. Oct. 24, 2022) ............................................................ 6

*United States v. Storm,*
    Doc.1, No. 23-cr-430 (S.D.N.Y. Aug. 21, 2023) ..................................................... 9, 20

*United States v. Storm,*
    Doc.53, No. 23-cr-430 (S.D.N.Y. Apr. 26, 2024) .............................................. 9, 18, 34

*United States v. Storm,*
    Doc.84, No. 23-cr-430 (S.D.N.Y. Oct. 21, 2024) ................................................... 9, 18

*United States v. Storm,*
    Doc.144, No. 23-cr-430 (S.D.N.Y. May 15, 2025) ............................................... 11, 26

*United States v. Storm*,
  Doc.241, No. 23-cr-430 (S.D.N.Y. Nov. 12, 2025) ................. 9, 11, 12, 18, 20, 21, 23

Van Valkenburgh, *What Does "Permissionless" Mean?*, Coin Center (Jan. 31, 2017),
  perma.cc/F32Z-8Q9K ............................................................................... 4

## INTRODUCTION

Michael Lewellen wrote a new kind of cryptocurrency software. When others published similar software, federal prosecutors went after them for "unlicensed money transmitting" under 18 U.S.C. §1960. Lewellen wants to publish his software, but he doesn't want to risk prison. So rather than bet the farm, he did what the law encourages: filed a preenforcement suit for a declaration that publishing his software cannot violate the unlicensed-money-transmitting statute. The Declaratory Judgment Act exists for this exact scenario. *See Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 927-28 (5th Cir. 2023) (plaintiffs "receiv[ing] clarification" regarding the scope of the law "before stifling" their conduct "is a core purpose of a declaratory judgment").

Yet the district court dismissed Lewellen's complaint for lack of standing. It ruled that Lewellen failed to plausibly allege a "substantial threat of prosecution under 18 U.S.C. §1960." ROA.299. Though Lewellen filed this case against Attorney General Garland during the Biden administration, the district court appeared to credit guidance from the Trump administration issued *after* the complaint. That guidance is nonbinding, refuses to disavow future prosecution, and actually endorses the Biden administration's reading of the statute. The district court also overly discounted the *actual prosecutions* that the government has brought (and continues to bring) against software publishers under §1960, stressing small factual differences between those defendants and Lewellen.

Respectfully and under de-novo review, the district court erred. Standing does not require prior prosecutions at all, let alone prior prosecutions with nearly identical

facts. Standing also doesn't turn on events that occur after the complaint is filed (mootness does, but no one thinks the standard for mootness is met here). Nor does any post-complaint guidance diminish the risk to Lewellen or somehow negate—at the pleading stage—all his other allegations why he faces a credible threat of enforcement. This Court should reverse the dismissal of Lewellen's complaint and remand for further proceedings.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction because Lewellen's claims under §1960 and the Constitution arise under federal law. 28 U.S.C. §1331. This Court has appellate jurisdiction because Lewellen appeals from a final judgment dismissing his entire complaint. 28 U.S.C. §1291. That final judgment was entered on March 25, 2026, and Lewellen timely appealed on April 3, 2026. ROA.302-05.

## STATEMENT OF THE ISSUES

I.      Does Lewellen's complaint plausibly allege Article III standing?

II.     If Lewellen's complaint plausibly alleges standing, should this Court remand the unresolved issues to the district court?

## STATEMENT OF THE CASE

Michael Lewellen is ready to publish cryptocurrency software called Pharos. The government's recent approach to the laws regulating money transmission would render him criminally liable. Yet when Lewellen brought a preenforcement challenge against the government, the district court dismissed his complaint at the threshold for failing to plead standing.

**I.    Lewellen creates new cryptocurrency software, called Pharos, that he wants to publish.**

Michael Lewellen is a lifelong Texan and a skilled cryptocurrency software developer. ROA.17-19 ¶¶25-34. Cryptocurrency is a digital system of money used by millions of Americans and many businesses. ROA.19-21 ¶¶35-40. *See generally Van Loon v. Dep't of Treasury*, 122 F.4th 549, 554-55 (5th Cir. 2024) ("primer on cryptocurrency and blockchain"). Cryptocurrency uses open-source code—a computer program that anyone can view, copy, and use for free. ROA.19 ¶36. Transactions are posted to a public ledger called a "blockchain." ROA.19 ¶36. But users can still protect their privacy when making transactions by generating pseudonymous accounts. ROA.19 ¶36.

The code underlying cryptocurrency software can be changed to achieve specific goals. For example, software can be designed to help users more easily move cryptocurrency on their desired terms. ROA.20 ¶38. Software can ensure that a user has total control, or no control, over the cryptocurrency as it moves from account to account. ROA.20 ¶38. And software can increase privacy by making it more difficult to link cryptocurrency transactions to a particular person. ROA.20 ¶39.

Lewellen created Pharos, a new kind of cryptocurrency software. ROA.21 ¶41. Pharos facilitates "crowdfunding," where various individuals get together to fund a charitable cause or business venture they believe in. *Virden v. City of Austin*, 127 F.4th 960, 962 (5th Cir. 2025). One problem with crowdfunding is that sometimes people want to fund something only if they can be certain that enough other people will fund it too. ROA.21-22 ¶42; *cf.* Mayer, *Regulating Charitable Crowdfunding*, 97 Ind. L.J. 1375,

3

1413 (2022). Pharos solves that problem by creating the cryptocurrency equivalent of an "assurance contract." ROA.22 ¶43; *see generally* Tabarrok, *The Private Provision of Public Goods via Dominant Assurance Contracts*, 96 Pub. Choice 345, 345-48 (1998). An assurance contract releases money only if the fundraising goal is met by a certain date. ROA.22 ¶43. If the goal isn't met, the money is returned to the contributors. ROA.22 ¶¶43-44. But because assurance contracts usually require an intermediary, they are often dismissed as too expensive, too complicated, and too unreliable. ROA.22 ¶44.

Pharos is a decentralized, permissionless system, meaning it works automatically without relying on a human intermediary. *Van Loon*, 122 F.4th at 554; *see generally* Van Valkenburgh, *What Does "Permissionless" Mean?*, Coin Center (Jan. 31, 2017), perma.cc/F32Z-8Q9K. Pharos removes the intermediary by using a smart contract. ROA.22-23 ¶45. If a fundraising target is reached by the campaign's end, the cryptocurrency flows to the campaign's recipient. ROA.22-23 ¶45. If not, the smart contract refunds the original contributors. ROA.22-23 ¶45. Pharos also has advanced privacy features that prevent supporter addresses from being publicly identifiable. ROA.24 ¶¶52-53. No other cryptocurrency software like it currently exists. ROA.21 ¶¶41-42.

Once Pharos is published, anyone can create a fundraising campaign using a website that Lewellen will pay for and maintain. ROA.25 ¶54. Each campaign will designate a recipient, the required amount to be raised, and an end to the contribution period. ROA.23 ¶46. Once the campaign is active, supporters can send their contributions directly to the campaign. ROA.23 ¶47. Contributions will be published to a unique

4

cryptocurrency address and securely stored at the immutable smart contract until the campaign ends. ROA.23 ¶47. If the fundraising goal is met on time, the designated recipient will receive the cryptocurrency, minus a predetermined fee that goes to Lewellen. ROA.23-24 ¶¶47, 50. If the fundraising goal is not met on time, the campaign's supporters will receive a refund. ROA.23 ¶47. Through this entire process, Lewellen will never control, process, or direct the cryptocurrency that moves from contributors to recipients. ROA.24 ¶48. The smart contract is "immutable," meaning Lewellen cannot control, alter, or edit the software—let alone control the underlying cryptocurrency that flows through the software. ROA.24 ¶49; *see also Van Loon*, 122 F.4th at 555 ("An immutable smart contract … cannot be altered or removed from the blockchain."). Pharos will merely provide the framework to facilitate these economic transactions.

Lewellen finished writing Pharos and is ready and able to publish it immediately. ROA.25 ¶54. Once published, he will market and promote Pharos according to his detailed business plan, and he will receive regular fees from its use. ROA.25 ¶54. A major nonprofit has already told Lewellen that it wants to use Pharos for fundraising campaigns. ROA.25 ¶54. Only one roadblock remains: the U.S. Department of Justice's interpretation and application of 18 U.S.C. §1960.

## II. The Justice Department reads the unlicensed-money-transmitting statute to cover software publishers like Lewellen and prosecutes them.

Federal law prohibits unlicensed money transmitting under two interrelated statutes: 18 U.S.C. §1960 (the criminal provision) and 31 U.S.C. §5330 (the civil provision).

The criminal provision bans a business from engaging in "unlicensed money transmitting" and penalizes violators with up to five years in prison. 18 U.S.C. §1960(a). The term "money transmitting" is defined to include "transferring funds on behalf of the public by any and all means." §1960(b)(2). And money transmitting is "unlicensed" if any of three conditions holds:

> A. It is done without the appropriate state license;
>
> B. It does not comply with the federal registration requirements set out in the civil provision, 31 U.S.C. §5330; or
>
> C. It "involves the transportation or transmission of funds" that the defendant knows "have been derived from a criminal offense or are intended to be used to promote or support unlawful activity."

§1960(b)(1)(A)-(C).

If §1960 applies to Lewellen, he cannot comply with it. Lewellen would not violate (A). And though Lewellen has no intent to violate (C), once Pharos is published, anyone will be able to use the software to create a fundraising campaign. ROA.23 ¶46. Lewellen won't know the source or purpose of the funds transferred by these users; but "there is a high probability" that, eventually, *someone* will use the software in a way that a prosecutor thinks implicates §1960(b)(1)(C). *See, e.g.*, *United States v. Sterlingov*, Doc.66 at 5, No. 21-cr-399 (D.D.C. Oct. 24, 2022). The government regularly seeks "deliberate ignorance" instructions in §1960(b)(1)(C) cases where actual knowledge cannot be proved. *See, e.g.*, *id.* at 7-12 (seeking such an instruction in the §1960(b)(1)(C) prosecution of a cryptocurrency software developer).

And Lewellen certainly cannot comply with (B). He can't comply with §5330's civil registration and reporting requirements because he will have neither custody over the cryptocurrency contributed through Pharos nor any way to obtain information about the donors. ROA.25 ¶56. In other words, given Pharos's design, it will be impossible for Lewellen to comply with 31 U.S.C. §5330.

But §5330, and thus §1960, should not apply to Lewellen in the first place. Section 5330 requires registration of any "money transmitting business." §5330(a)(1). Money transmitting is the "acceptance," "transmission," or "transfer" of funds on behalf of the public. 31 C.F.R. §1010.100(ff)(5); *accord* 31 U.S.C. §5330(d)(2) (defining "money transmission service" to include "accepting" or "transmitting" funds); 18 U.S.C. §1960(b)(2). Under their plain meaning and legal definitions, the terms "transfer," "transmit," and "accept" all require possession or control over the object being moved. Someone does not "transfer," "transmit," or "accept" some object when he simply creates the tool that other people use to move it. *See* ROA.26-28 ¶¶60-63. So too with Pharos, where Lewellen publishes noncustodial cryptocurrency software that allows the transfer of cryptocurrency from one person to another but lacks any possession or control over the cryptocurrency. ROA.24 ¶¶48-49.

The federal government used to agree. The federal agency tasked with enforcing the civil provision, the Financial Crimes Enforcement Network (or FinCEN), published guidance on cryptocurrency "business models" in 2019. *See Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies*, FIN-2019-G001

7

(May 9, 2019), perma.cc/8M5Z-QY2D. There, FinCEN said those who create privacy-enhancing anonymizing cryptocurrency "software" merely provide "tools" for others to use and so are "not" engaged in "money transmission." *Id.* at 20; *accord id.* at 15-16. This 2019 guidance followed other, older FinCEN guidance that "software creators who lack control over money being moved are not money transmitters." ROA.29 ¶67; *see also, e.g.*, *Application of FinCEN's Regulations to Virtual Currency Software Development and Certain Investment Activity*, FIN-2014-R002, at 2 (Jan. 30, 2014), perma.cc/4B2Q-XKEV ("the production and distribution of software, in and of itself, does not constitute acceptance and transmission of value" and so is not money transmission); *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN2013-G001, at 4-5 (Mar. 18, 2013), perma.cc/5WCK-BLGF (money transmitter must "accept" and "transmit" the cryptocurrency, not merely transfer it).

And yet, starting in 2023, the Justice Department began prosecuting the creators of noncustodial software as unlicensed money transmitters. *See, e.g.*, *United States v. Storm*, No. 23-cr-430 (S.D.N.Y.); *United States v. Rodriguez*, No. 24-cr-82 (S.D.N.Y.). In *Storm*, for example, the Department prosecuted the creators of "Tornado Cash," a noncustodial software tool that allowed users to move their cryptocurrency from one account to another more privately. And in *Rodriguez*, the Department prosecuted the creators of the "Samourai Wallet," another noncustodial software product that let users move their cryptocurrency among accounts more privately. In each case, the Department argued—

and won—that publishing noncustodial software that allows others to move cryptocurrency was itself money transmission under §1960. *See, e.g.*, *Storm*-Doc.1 at 32-34 (Aug. 21, 2023); *Rodriguez*-Doc.4 at 17-18 (Feb. 14, 2024).

Unsettling §1960's established meaning, the government argued that money transmission "does not require the business to have control of the funds." *Storm*-Doc.53 at 34 (Apr. 26, 2024). Creating noncustodial software for helping users move cryptocurrency from one address to another, the government insists, counts as money transmission. The court in *Storm* agreed that "control is not a necessary requirement of [a] Section 1960 offense." *Storm*-Doc.84 at 21 (Oct. 3, 2024). Adopting the government's interpretation of §1960, the *Storm* court deemed it sufficient that the defendant created software and an optional interface used by *others* to move cryptocurrency, paid for and had control over the interface (though not the cryptocurrency), and marketed the product (and perhaps sometimes received payments when people used the service). *Id.* at 20-34. The government brought the prosecutions, moreover, even after "senior representatives of [FinCEN] told prosecutors that under FinCEN's guidance, the Samourai Wallet app would not qualify as a 'Money Services Business'" "[b]ecause Samourai does not take 'custody' of the cryptocurrency." *Rodriguez*-Doc.86 at 1, 7 (May 5, 2025). Yet the Department not only overruled FinCEN, but also told the courts that FinCEN's guidance *never* said "custody of users' funds" was needed "for a business to be a money transmitter." *Storm*-Doc.241 at 67 n.16 (Nov. 12, 2025).

Lewellen is not the only one whose plans have been ground to a halt by the government's new, aggressive approach to §1960. Many involved in cryptocurrency agree that the "uncertainty and fear of criminal prosecution is actively stymying innovation and development of new cryptocurrency tools." ROA.217 & n.4 (collecting sources). Members of Congress have likewise raised "grave concerns" about the government's approach to §1960, warning that it "makes it difficult for ordinary Americans to determine what their legal obligations are." Sens. Lummis & Wyden, *Re: Money Transmitting Business Registration and Non-Custodial Crypto Asset Software*, at 1-2 (May 9, 2024), perma.cc/9AKY-PZRX.

**III.   Lewellen brings this preenforcement action seeking relief that lets him publish his software; but after a change in presidential administration, the district court dismisses for lack of standing.**

Lewellen filed this preenforcement suit against Attorney General Garland in January 2025. He sought a declaration that his planned cryptocurrency business does not violate the federal money-transmission laws and that the government's contrary interpretation of §1960 violates the First and Fifth Amendments. ROA.37-47 ¶¶95-126.

Four months after Lewellen sued, then-Deputy Attorney General Todd Blanche issued a memorandum outlining the Justice Department's "enforcement priorities" for cryptocurrency. *See Ending Regulation by Prosecution* (Apr. 7, 2025), perma.cc/48LS-XGXP ("Blanche Memo"). The Blanche Memo starts by admitting that "the prior Administration used the Justice Department to pursue a reckless strategy of [cryptocurrency] regulation by prosecution." Blanche-Memo.1. But it says "the Department will

10

no longer target" certain cryptocurrency activities. Blanche-Memo.1. It then outlines "factors" that prosecutors should "consider" when "deciding whether to pursue criminal charges involving digital assets." Blanche-Memo.2. Relevant to §1960, the Blanche Memo states: "Prosecutors should not charge regulatory violations in cases involving digital assets … under 18 U.S.C. §1960(b)(1)(A) and (B) … unless there is evidence that the defendant knew of the licensing or registration requirement at issue and violated such a requirement willfully." Blanche-Memo.2-3.

Notably, the Blanche Memo does not disclaim enforcement authority against software developers. While it signals that such developers will be less of a focus, the memo maintains that this shift in focus "is not required by law, but is being imposed as a matter of discretion." *Id.* at 3 & n.2. Reiterating the point, the prosecutors in *Storm* stated that, although they were choosing not to try the §1960(b)(1)(B) charge, the entire "prosecution is consistent with the letter and spirit of the [Blanche Memo]." *Storm*-Doc.144 (May 15, 2025).

Also notably, the government continued to press (b)(1)(C) charges in both *Storm* and *Rodriguez,* as (C) is "outside the scope of [the Blanche Memo]." Blanche-Memo.3 n.2. The government pressed the (b)(1)(C) charge in *Rodriguez* all the way to a guilty plea. *Rodriguez*-Doc.160 (Nov. 6, 2025). And it continues to press its flawed interpretation of §1960(b) in *Storm* today. *Storm*-Doc.241 at 84-87. Its adherence to these charges is highly disturbing for software developers like Lewellen because, although (b)(1)(C) has an extra knowledge element, it still requires the government to "prove that the

11

business engaged in 'money transmitting' as that term is defined in Section 1960(b)(2)." *Rodriguez*-Doc.118 at 20 (June 26, 2025); *accord Storm*-Doc.241 at 63-64, 73. In other words, to prosecute these defendants under §1960(b)(1)(C), the government must prove the elements of §1960(b)(1)(B)—and thus to maintain its position that nothing in §1960's definition of "money transmitting" requires the defendant to have custody and control over the funds being transferred by users.

Back in Lewellen's case, the government moved to dismiss the complaint under Rules 12(b)(1) and (b)(6). It raised several threshold arguments, including standing, for why the complaint failed to plausibly allege jurisdiction on its face. *See* ROA.118-48. The government did not attach any outside evidence to its motion. And nowhere did the government disclaim its intent or power to prosecute Lewellen if he published Pharos. To the contrary, it warned that it "cannot disclaim an intent to prosecute." ROA.263. And it even argued that neither the Constitution nor FinCEN's guidance would bar that prosecution. *See, e.g.*, ROA.142-47, 268.

The district court, reaching only one of the government's standing arguments, dismissed Lewellen's complaint. ROA.296-301. It held that Lewellen lacked standing because he failed to "show 'a credible threat of prosecution' under 18 U.S.C. §1960." ROA.301. There is no credible threat of prosecution, the district court held, because the "core conduct" in the government's prior prosecutions was different. ROA.299-300. Although the prosecutions in *Storm* and *Rodriguez* also involved "non-custodial cryptocurrency technology," the district court said the "similarity of the tools does not

establish similarity of conduct." ROA.300. According to the district court, the government's position "that 18 U.S.C. §1960 does not require the business to have control of transferred cryptocurrency as a prerequisite to registering as a money transmitter" is irrelevant to Lewellen because the government took that position only "when targeting money laundering," which Lewellen doesn't plan to do. ROA.300. The district court also cited the Blanche Memo to support its conclusion that Lewellen faced no credible threat of prosecution. *See id.* at 300.

## SUMMARY OF THE ARGUMENT

**I.** The district court erred in dismissing Lewellen's preenforcement challenge for failure to plausibly allege standing. Lewellen's complaint alleges an Article III injury because he plans to engage in conduct that is arguably protected, that conduct is arguably proscribed, and he faces a substantial threat of prosecution. Because his injury is caused by the challenged law and redressed by a declaration or injunction against an official charged with enforcement, Lewellen plausibly alleged standing.

The district court's ruling that Lewellen does not face a substantial risk of prosecution is wrong for several reasons. It overly discounts the government's prior prosecutions, and it fails to credit an independent basis for finding a credible threat: the government's refusal to disavow prosecution. The district court also considered the Blanche Memo, a document that didn't exist when Lewellen sued and that bolsters Lewellen's fears in any event.

13

**II.** Though the Court need not address the alternative jurisdictional arguments raised by the government but not addressed below, those arguments also fail. So if this Court is inclined to reach them in the first instance, it should reject them—clearing the way for the district court to review the merits on remand.

## ARGUMENT

This Court reviews the district court's dismissal for lack of standing de novo. *Barilla v. City of Houston*, 13 F.4th 427, 430 (5th Cir. 2025). Though Lewellen bears the burden on standing, a lower standard applies at the pleading stage. *Di Angelo Publ'ns v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021). The complaint need only "allege a plausible set of facts establishing jurisdiction." *Id.* at 431. When, as here, a defendant makes a facial challenge to the court's jurisdiction unsupported by "affidavits, testimony, or other evidentiary material," the court's review is limited "to the sufficiency of the allegations in the complaint." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Lee v. Verizon Commc'ns*, 837 F.3d 523, 533 (5th Cir. 2016). The Court must accept as true the "'well-pled factual allegations of the complaint'" and view those facts "'in the light most favorable to the plaintiff.'" *Barilla*, 13 F.4th at 431.

Lewellen's complaint sufficiently alleges each part of the three-part test for preenforcement standing. This Court should reverse on standing. It should either remand all other issues to the district court or reject the government's other jurisdictional arguments and remand the merits to the district court.

14

**I.    Lewellen's complaint plausibly alleges standing to bring a preenforce-
ment challenge to 18 U.S.C. §1960.**

The law encourages preenforcement challenges. "Rudimentary justice requires that those subject to the law must have the means of knowing what it prescribes." *Braidwood*, 70 F.4th at 924 (quoting Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179 (1989)). So Article III does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech*, 549 U.S. 118, 128-129 (2007). A society founded on the rule of law does not want individuals to "bet the farm" by breaking the law first and vindicating their rights second. *Id.* at 129, 134. The very "purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of the law." *Braidwood*, 70 F.4th at 926 (cleaned up); *accord* 13B Wright & Miller, Fed. Practice & Procedure §3532.5 (3d ed. 1998) ("[C]itizens should be allowed to prefer official adjudication to private diso-bedience.").

Because preenforcement challenges are favored, plaintiffs can plead and prove standing in this context—even though the plaintiff technically eliminates the "imminent threat of prosecution" by his "own action (or inaction)." *MedImmune*, 549 U.S. at 128-29; *e.g.*, *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). A plain-tiff has standing when he intends to engage in conduct that is arguably protected, his intended conduct is arguably proscribed, and he faces a substantial threat of enforce-ment. *Barilla*, 13 F.4th at 431-32. When those three elements exist, the "threatened en-forcement of [the] law creates an Article III injury." *SBA List v. Driehaus*, 573 U.S. 149,

158-59 (2014). That injury is caused by the challenged law and is redressable by a declaration or injunction against an official charged with enforcing that law. *See Inst. for Free Speech v. Johnson*, 148 F.4th 318, 330 (5th Cir. 2025); *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 784-85 (5th Cir. 2024); *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 289-90 (5th Cir. 2025); *LIA Network v. City of Kerrville*, 163 F.4th 147, 159 (5th Cir. 2025).

Lewellen's complaint plausibly alleges standing. Each of the three elements from *SBA List* are satisfied—or at least plausibly alleged, at this early stage.

**A. Lewellen's planned publication of Pharos is arguably protected.**

Lewellen "sufficiently pleaded his 'intention to engage in a course of conduct arguably affected with a constitutional interest.'" *Barilla*, 13 F.4th at 432. The government did not question whether Lewellen has shown a "serious intent" to engage in the conduct alleged in his complaint. *Id.* Nor could it have. The complaint explains in detail each step that Lewellen has taken regarding Pharos, and each step that he would take but for §1960. ROA.18-19 ¶¶33; ROA.21-25 ¶¶41-57. Article III does not require that Lewellen take the "final step"—publication of the software—that risks criminal liability. *MedImmune*, 549 U.S. at 128-29; *accord Inst. for Free Speech*, 148 F.4th at 327-28 (allegations of "concrete plans" are sufficient).

Lewellen's plans are also "'arguably affected with a constitutional interest.'" *Barilla*, 13 F.4th at 432 (quoting *SBA List*, 573 U.S. at 161). Though the caselaw often discusses whether the plaintiff's conduct is "constitutional[ly]" protected, that's because

16

many preenforcement cases challenge statutes on constitutional grounds. *See, e.g.*, *SBA List*, 573 U.S. at 161-62. (First Amendment). But the test for preenforcement standing also applies to plaintiffs who bring statutory claims, including claims under the Declaratory Judgment Act, that a statute does not cover the intended conduct in the first place. *See, e.g.*, *Braidwood*, 70 F.4th at 923-30, 932-33 (in addition to constitutional challenge, party had standing to challenge the EEOC's post-*Bostock* interpretation of Title VII); *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 50-51 (1st Cir. 2021) (party asserting no constitutional claim had standing to seek preenforcement declaratory judgment regarding the scope of 18 U.S.C. §1084).

Under any approach, Lewellen's conduct is arguably protected. The complaint explains why the publication of his software is constitutionally protected speech. *See* ROA.40-44 ¶¶106-16; *accord* SEC Comm'r Peirce, *Remarks at the IC3 Blockchain Camp: Base Case* (June 2, 2026), perma.cc/9TU3-GELS ("Publishing code is speech, which the First Amendment protects"). And the complaint explains why the government's reading of §1960 is both wrong, ROA.26-31 ¶¶56-74, and violates Lewellen's due-process rights, ROA.44-47 ¶¶117-26. For purposes of standing, it doesn't matter whether Lewellen's constitutional and statutory claims are correct—only that they're arguable. *Inst. for Free Speech*, 148 F.4th at 328 n.2. They are, *see* ROA.158-89, and the district court never suggested otherwise.

### B. Lewellen's planned publication of Pharos is arguably proscribed by §1960.

Lewellen's intended conduct is also "arguably proscribed." *Barilla*, 13 F.4th at 433. This element does not require that the plaintiff's conduct be illegal under a correct interpretation of the statute, or even the "*best interpretation*" of the statute—only an arguable one. *Turtle Island Food v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023); *accord Speech First v. Fenves*, 979 F.3d 319, 332 n.10 (5th Cir. 2020). More than arguable, the reading of §1960 that proscribes Lewellen's conduct is the one that the government has successfully advanced in several prosecutions. *Storm*-Doc.53 at 34; *Storm*-Doc.84 at 21; *Rodriguez*-Doc.118 at 32-33.

Under the government's view of §1960, Lewellen's publication of Pharos arguably violates the statute. As explained, the government has taken the position that §1960 "does not require the business to have control of the funds." *Storm*-Doc.53 at 34; *accord Rodriguez*-Doc.118 at 32-33. And the government maintained in both *Storm* and *Rodriguez* that the creation of noncustodial software allowing others to move cryptocurrency is "money transmitting" under §1960(b)(2). *Rodriguez*-Doc.118 at 20; *Storm*-Doc.241 at 63-64, 73. Without the critical limitation of control, Lewellen arguably satisfies the other elements of §1960. Pharos's privacy protections prevent him from obtaining registration under §5330. *See* ROA.25 ¶56. And because Lewellen knows the government's interpretation requires him to register, his failure to do so is knowing and willful. *See* Blanche-Memo.2-3 & n.2. The district court never disagreed.

18

Lewellen is not alone in recognizing the scope and implications of the government's position. As a collective of cryptocurrency investment firms, nonprofits, trade associations, and others explained below, the "Government's new expansive interpretation of §1960 to prosecute cryptocurrency software developers has roiled the cryptocurrency industry, fueling widespread uncertainty and fear of similar prosecution." ROA.217; *accord* ROA.217 n.4 (collecting resources that show the government's interpretation of §1960 "is actively stymying innovation and development of new cryptocurrency tools"). Congress has taken note too. Senators Lummis and Wyden sent a letter to Attorney General Garland noting their "grave concerns" about the government's new interpretation of §1960—one that "makes it difficult for ordinary Americans to determine what their legal obligations are." ROA.35, 217. And the recognized need to "protec[t] software developers" is why Congress is currently considering a bill—the CLARITY Act—that would overrule the Justice Department by clarifying that the creation and publication of noncustodial cryptocurrency software is *not* money transmitting. *Fact Sheet: The CLARITY Act Protects Software Developers While Promoting Responsible DeFI Innovation*, Committee on Banking, Housing, & Urban Affairs (Jan. 13, 2026), perma.cc/4Z6G-2ZKW.

### C. If Lewellen published Pharos, he would face a credible threat of enforcement.

Lewellen's complaint plausibly alleges a credible threat of enforcement. As many courts have observed, a credible threat "is not a high bar." *Sanchez v. Torrez*, 173 F.4th 1202, 1214 (10th Cir. 2026); *accord, e.g.*, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d

Cir. 2016) ("a low threshold" that "is quite forgiving to plaintiffs seeking … pre-enforcement review"). Because §1960 is not moribund and "arguably" restricts Lewellen's intended expressive conduct, *supra* I.B, this Court will "assume a substantial threat of future enforcement absent compelling contrary evidence." *Barilla*, 13 F.4th at 433; *accord Woodlands Pride v. Paxton*, 168 F.4th 293, 301 n.5 (5th Cir. 2026) (explaining that the same analysis applies when chilled expression is the injury for other, non-First Amendment claims). With or without assumptions, Lewellen plausibly alleged a credible threat here.

Lewellen faces a credible threat based on the government's recent prosecutions in *Storm* and *Rodriguez*. Though "a lack of past prosecution does not alone doom a claim of standing," prior enforcement is strong evidence of a credible threat. *Fenves*, 979 F.3d at 336. In both *Storm* and *Rodriguez*, the government pressed a theory of §1960 that subjected developers of noncustodial software who had no control over transferred funds to criminal prosecution under (b)(1)(B) and (b)(1)(C). *Storm*-Doc.1 at 32-34; *Rodriguez*-Doc.4 at 17-18. The government argued in each case that creators of noncustodial software were "engaged in 'money transmitting' as that term is defined in Section 1960(b)(2)." *Rodriguez*-Doc.118 at 20; *Storm*-Doc.241 at 63-64, 73. The government's prosecutions in those cases are sufficient evidence that Lewellen faces a credible threat. *Braidwood*, 70 F.4th at 927; *Block v. Canepa*, 74 F.4th 400, 410 (6th Cir. 2023).

Lewellen also faces a credible threat based on the government's refusal to disavow prosecution. *Braidwood*, 70 F.4th at 927. An authority's "refusal to disavow" future

20

enforcement carries "'heavy weight' in the pre-enforcement standing analysis" and can support standing even without any history of enforcement. *Inst. for Free Speech*, 148 F.4th at 329; *see, e.g.*, *LUPE*, 151 F.4th at 289. Here, the government has never disavowed prosecution of software publishers generally, or Lewellen specifically. In its briefing below, the government warned that it "cannot disclaim an intent to prosecute due to a complete lack of information available about Pharos." ROA.263. That refusal was deliberate: The government has Lewellen's detailed allegations about Pharos (which must be accepted as true at this stage) and is perfectly capable of opining on them. Its calculated statement "that enforcement would depend on the facts" is a refusal to disavow. *Inst. for Free Speech*, 148 F.4th at 329 (cleaned up). This Court has "repeatedly held that plaintiffs have standing in the face of similar prosecutorial indecision." *Franciscan All. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022) (collecting cases).

Worse, the Justice Department has continued to defend its sweeping interpretation of §1960, even after Lewellen's suit. *See, e.g.*, *Storm*-Doc.241 at 63-64, 73, 84-87. Below, the government moved to dismiss Lewellen's complaint not just for lack of jurisdiction, but also on the merits—arguing that FinCEN's guidance did not contradict its position or its active prosecutions and that Lewellen's intended conduct would not be speech protected by the First Amendment. ROA.142-47. The government's continued defense of its sweeping interpretation of §1960 is the opposite of a disavowal. *Fenves*, 979 F.3d at 337. It alone establishes a credible threat, even if the government never cleanly concedes that Lewellen's conduct is illegal. *LIA Network*, 163 F.4th at 158.

The district court disagreed for two reasons. It discounted the prosecutions in *Storm* and *Rodriguez* because it thought the "core conduct" in those cases was "money laundering," which Lewellen doesn't intend to do. ROA.300; *see also* ROA.14 ¶16 (alleging that "Lewellen will not transport known criminal funds"). The court also cited the Blanche Memo, ROA.300-01, despite acknowledging that the memo didn't exist until many months after Lewellen sued, ROA.300 n.12. Neither line of reasoning was a basis to dismiss the complaint for failure to plausibly allege standing.

***Prior Prosecutions***: The district court's treatment of *Storm* and *Rodriguez* is unpersuasive for two main reasons.

First, prior enforcement can prove a credible threat even if the prior cases do not involve "precisely the same" facts. *Braidwood*, 70 F.4th at 927. In *Block v. Canepa*, for example, a wine consumer faced a credible threat of prosecution under a law regulating alcohol transportation, even though state prosecutors insisted they had only ever enforced the law against "resellers" and "liquor." 74 F.4th at 410. Because the text of the law arguably covered the plaintiff, the plaintiff could reasonably think the lack of a factually analogous case was "simply a coincidence," "especially considering the small sample size of arrests." *Id.* Indeed, courts agree that the "voluntary exercise of prosecutorial discretion applied to one type of violation does not neutralize the otherwise credible threat of prosecution." *Canna Provisions, Inc. v. Garland*, 738 F. Supp. 3d 111, 120 (D. Mass. 2024). What matters is whether the government's interpretation of the

22

"statutory provision as a whole" makes the plaintiff's intended conduct arguably illegal. *Sandvig v. Sessions (Sandvig I)*, 315 F. Supp. 3d 1, 19 (D.D.C. 2018) (collecting cases).

Here, the *Storm* and *Rodriguez* prosecutions reveal that the government thinks Lewellen's intended conduct violates federal law. In both cases, the government charged developers of noncustodial cryptocurrency software under §1960(b)(1)(B) and (C), even though the developers never controlled the transferred funds. ROA.299-300. True, the government chose to launch its new, aggressive interpretation of §1960 in arguably unsympathetic cases involving allegations of "money laundering." ROA.300. But nothing in §1960(b)(1)(B) requires proof of money laundering. Nor is money laundering sufficient under §1960(b)(1)(C); the government must also prove that a person is "engaged in 'money transmitting' as that term is defined in Section 1960(b)(2)." *Rodriguez*-Doc.118 at 20; *Storm*-Doc.241 at 63-64, 73. The government convinced the Court in *Storm* that creators of noncustodial cryptocurrency software were "engaged in 'money transmitting'" via public use of their software. As explained, no more analytical work is needed to make Lewellen's conduct illegal under §1960(b)(2). If an ambitious prosecutor in the Southern District of New York charged Lewellen for Pharos, no one thinks Lewellen could defend himself by saying "But I wasn't involved in money laundering." Law-abiding citizens like Lewellen who know the federal government thinks their protected conduct is illegal need not rely on mere prosecutorial discretion—leaving their liberty "'at the mercy of noblesse oblige.'" *FCC v. Fox Television Stations*, 567 U.S. 239, 255 (2012).

23

This Court's decision in *Umphress v. Hall* supports Lewellen. As this Court explained there, prior enforcement actions are always "context-specific," and yet those factual nuances do not diminish the credible threat to others that they create. 133 F.4th 455, 466 (5th Cir. 2025). In *Umphress*, the Court found a credible threat of enforcement because one other person had been disciplined for "substantially similar" "core conduct," the defendant "refus[ed] to disavow future enforcement" against the plaintiff, and complaints were easy to file. *Id.* Here, too, Lewellen's conduct is substantially similar to the defendants in *Storm* and *Rodriguez* because, under the government's theory in those cases, his conduct satisfies all the elements of §1960. Like the defendant there, the government "'cannot guarantee that there will never be any future'" enforcement against him. *Id.* And Lewellen is particularly vulnerable because prosecutors in the Southern District of New York have unique autonomy and claim essentially nationwide jurisdiction over anything that eventually touches Manhattan. ROA.33 ¶83.

Second, even if the *Storm* and *Rodriguez* prosecutions somehow offered *no* support for Lewellen's standing, his complaint still plausibly alleges a credible threat of enforcement. This Court has made clear that "a lack of past enforcement does not alone doom a claim of standing." *Fenves*, 979 F.3d at 336. As Lewellen alleged and argued below, the government "has not disavowed enforcement against Lewellen," ROA.36 ¶91; ROA.181, and that refusal (plus the arguable application of §1960 to Lewellen's intended conduct) is an independent basis for finding a credible threat of enforcement

24

here, *LUPE*, 151 F.4th at 289. The government's argument that it needs more information about Pharos doesn't mitigate this risk. *Inst. for Free Speech*, 148 F.4th at 329. At bottom, what stands between Lewellen's liberty and criminal prosecution is nothing more than the government's discretion; Lewellen has standing to ask a court to resolve that real controversy now, rather than after he risks ruinous criminal liability. *See Turtle Island*, 65 F.4th at 218; *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000).

***Blanche Memo***: To the extent the district court bolstered its ruling by relying on the Blanche Memo, that reliance was also an error. There are at least three main problems with it.

First, as the district court elsewhere noted, the Blanche Memo was issued after Lewellen filed suit. ROA.300 n.12. It is well-established that "standing is determined as of the date of the filing of the complaint." *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 377 (5th Cir. 2023) (en banc), *vacated on other grounds*, 144 S.Ct. 480 (2023). It's not like the Blanche Memo revealed some longstanding policy of nonprosecution that existed under the Biden administration, when Lewellen sued. *Contra Sacks v. OFAC*, 466 F.3d 764, 774 (9th Cir. 2006). The memo concedes that the Biden administration was using "regulation by prosecution" to chill lawful cryptocurrency activity and insists that the Trump administration is doing something new. Blanche-Memo.1. New events occurring after the complaint is filed sometimes implicate mootness, but never standing. *Feds for Med. Freedom*, 63 F.4th at 377; *accord Fischer v. Thomas*, 176 F.4th 470, 474 (6th Cir. 2026). The Blanche Memo is legally irrelevant to standing.

Second, even if the Blanche Memo should be considered, it mostly *confirms* that Lewellen faces a credible threat of prosecution. The memo could have disavowed the Biden administration's interpretation of §1960 as a matter of law, but it notably refuses. *See* Blanche-Memo.3 & n.2. In fact, the memo effectively "concedes that [the government] may" enforce §1960 against Lewellen. *Franciscan All.*, 47 F.4th at 376. It reiterates that the government *will* prosecute individuals under §1960(b)(1)(B) when "there is evidence that the defendant knew of the licensing or registration requirement at issue and violated such a requirement willfully," Blanche-Memo.2-3 & n.2—a low bar for creators like Lewellen. And it does not address §1960(b)(1)(C) at all, including the necessary premise that the creators of noncustodial software can engage in "money transmitting" regardless of control. Hence why prosecutors insisted that the *Storm* prosecution remained "consistent with the letter and spirit of the [Blanche Memo]." *Storm*-Doc.144. Because "the distance" between *Storm/Rodriguez* and Lewellen appears "unknown by [the government] and unknowable to those regulated by [§1960]," the credible threat is not diminished. *Fenves*, 979 F.3d at 338. If anything, that the Justice Department felt the need to administratively limit enforcement of §1960 proves that it *does* believe the conduct described in the Memo falls within the reach of that statute. *See id.* at 332.

Third, the Blanche Memo is not enough to dispel—at the pleading stage—the plausible inference of standing created by Lewellen's other allegations. The Blanche Memo concedes that the government's new enforcement is a matter of policy discretion, not law. Blanche-Memo. 3 & n.2. And such "advisory and non-binding statements

26

and Department of Justice policies do not eliminate the reasonable fear of prosecution." *Sandvig v. Barr (Sandvig II)*, 451 F. Supp. 3d 73, 81 (D.D.C. 2020); *accord Nat'l Ass'n for Gun Rights v. Garland*, 741 F. Supp. 3d 568, 586 (N.D. Tex. 2024). Nothing prevents a future Justice Department—or even this Justice Department—from reversing course. *See Turtle Island*, 65 F.4th at 218; *Inst. for Free Speech*, 148 F.4th at 332-33. Given the acknowledged fervor with which the Biden administration prosecuted cryptocurrency, *see* Blanche-Memo.1, shifting views on this topic are likely. *See Bryant v. Woodall*, 1 F.4th 280, 288 (4th Cir. 2021) (a "court cannot say that the threat of prosecution … is not credible" even if the precise "likelihood of future prosecution" is "difficult to predict" when "conversation rages" on a hotly debated issue). Even in cases where prosecutors denied any interest in prosecution in much stronger terms than the Blanche Memo, courts have refused to deny standing based on these post-lawsuit representations. *See, e.g.*, *Franciscan All.*, 47 F.4th at 376; *Vt. Right to Life*, 221 F.3d at 383; *Rogers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990).

In sum, Lewellen has alleged that he will engage in conduct prohibited under the government's reading of §1960, the government has prosecuted others under its reading of §1960, and the government has not disavowed prosecuting Lewellen under §1960. He has plausibly alleged a credible threat of prosecution and, thus, standing.

**II.    There are no other viable objections to the district court's jurisdiction.**

Because the district court erred on standing—the sole ground for its decision—the dismissal of Lewellen's complaint should be reversed. The question is what else, if anything, this Court should do.

This Court generally will remand questions "not passed upon below." *Pena v. Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). That practice includes jurisdictional questions that were briefed, but not decided, below. *See, e.g.*, *Abraugh v. Altimus*, 26 F.4th 298, 306 (5th Cir. 2022) (declining to address alternative jurisdictional arguments after resolving standing). This Court especially does not decide the merits on appeal, when the district court addressed only jurisdiction. *See, e.g.*, *SFFA v. Univ. of Tex. at Austin*, 142 F.4th 819, 828 (5th Cir. 2024) ("As a well-established general rule, this court will not reach the merits of an issue not considered by the district court. Our court is one of review, not first review, so we follow that well-traveled path and remand for consideration in the first instance." (cleaned up)). Lewellen thinks that ordinary practice should be followed here, for both the jurisdictional and merits issues that the district court did not reach.

When the district court addresses one jurisdictional issue but not others, this Court sometimes addresses the other jurisdictional issues before remanding the merits. *See, e.g.*, *Triland Holdings & Co. v. Sunbelt Serv. Corp.*, 884 F.2d 205, 208-09 (5th Cir. 1989); *accord Nat'l Org. for Marriage v. Walsh*, 714 F.3d 682, 691-93 (2d Cir. 2013) (reaching jurisdictional issues not addressed by the district court but remanding for the district court

28

to address the merits first). If the Court takes that approach here, it should hold that jurisdiction is proper. Neither mootness, nor ripeness, nor sovereign immunity is a valid reason for the district court not to proceed to the merits.

### A. This suit is not moot.

As explained, if the Blanche Memo is relevant at all, it implicates mootness—not standing. *Supra* I.C. But the government disclaimed any reliance on mootness below. ROA.262 n.2. It had to, since the standard for mootness by voluntary cessation is not remotely met.

The government's refusal to argue mootness below decides the issue. Though mootness is jurisdictional, the "formidable burden" to prove mootness through voluntary cessation lies with the government. *FBI v. Fikre*, 601 U.S. 234, 241 (2024). The government is in the best position to know whether a risk remains that it will enforce the challenged law against the plaintiff. So when the government refuses to make the argument, it fails to carry its burden, and the court can treat the controversy as live. *Golden v. City of Columbus*, 404 F.3d 950, 962 n.10 (6th Cir. 2005). In *Trinity Lutheran v. Comer*, for example, the Supreme Court relied on the parties' agreement to find that the government's voluntary cessation had not mooted the case. 582 U.S. 449, 457 n.1 (2017).

Even if the government had argued mootness, it cannot carry its "formidable burden" of proving mootness through voluntary cessation. *Fikre*, 601 U.S. at 241. The threat of enforcement needed to overcome mootness is even lower than the threat of

enforcement needed to allege standing. *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 190 (2000). So for the same reasons the Blanche Memo does not diminish the credible threat of enforcement, it cannot moot this case. *Supra* I.C. In brief, the Blanche Memo is nonbinding, noncommittal, and subject to change. *See Pool v. City of Houston*, 978 F.3d 307, 313-14 (5th Cir. 2020). Neither the memo nor the government disavows prosecution or the Biden administration's misguided interpretation of §1960. *Cf. id.* (noting that even disavowals can be insufficient to moot a case). And the government has continued prosecutions that rely on that misguided interpretation. Because this Court can declare that interpretation wrong and unconstitutional, it can still "provid[e] meaningful relief to the plaintiff." *Umphress*, 133 F.4th at 468-69; *accord N.H. Lottery Comm'n*, 986 F.3d at 53-54 (holding that the government's memo merely noting a change in the "exercise of prosecutorial discretion" "did not moot the case"). This controversy is not moot.

### B. This suit is ripe.

Contrary to the government's argument below, Lewellen's claims are ripe. They are ripe for the same reasons he has standing. As this Court held in *Braidwood*, "[i]t remains unclear whether [a court] can reject a claim as unripe once plaintiffs have established Article III standing." 70 F.4th at 930 n.28. And in preenforcement cases, "standing and ripeness boil down to the same question." *MedImmune*, 549 U.S. at 128 n.8. Like standing, "ripeness" simply requires that an injury "be 'sufficiently likely to

happen to justify judicial intervention.'" *Gulfport Energy v. FERC*, 41 F.4th 667, 679 (5th Cir. 2022). Because Lewellen faces a credible threat, that ripeness standard is met.

If ripeness requires an independent analysis, it would turn on two factors: (1) "'the fitness of the issue for judicial decision'" and (2) "'the hardship to the parties of withholding court consideration.'" *Braidwood*, 70 F.4th at 930. And in cases seeking declaratory relief, courts also "assess" a third factor: whether "an actual or immediate controversy exists" or whether "the controversy remains abstract and hypothetical." *Id.* Lewellen satisfies each factor.

Lewellen's claims are fit. A claim is fit if it can be adjudicated without further factual development. *Id.* at 931. A claim is also fit when an agency has already "brought a successful suit against another [regulated entity] for the same [practices]." *Id.* And a claim is fit when a plaintiff plans some activity over which it believes the agency "lack[s] statutory jurisdiction." *Gulfport Energy*, 41 F.4th at 679; *accord Contender Farms v. USDA*, 779 F.3d 258, 267-68 (5th Cir. 2015). Lewellen's allegations easily meet this standard. He has already created Pharos, written a business plan, and identified potential clients. ROA.21-25 ¶¶41-57. And he stands ready and able to execute this plan. ROA.25 ¶54. On Lewellen's view of the law—which the Court must adopt in deciding ripeness, *Contender Farms*, 779 F.3d at 267—he has alleged every fact required to show that his conduct is lawful but wrongfully considered unlawful by the government. ROA.267-68.

Withholding judicial resolution will cause Lewellen "hardship." *Gulfport Energy*, 41 F.4th at 679. "If a threatened injury is sufficiently imminent to establish standing,

31

the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *McCall v. Dretke*, 390 F.3d 358, 362 (5th Cir. 2004) (cleaned up). Lewellen plausibly alleged hardship for the same reasons he plausibly alleged an Article III injury: His inaction is caused by a "genuine threat of enforcement." *MedImmune*, 549 U.S. at 129. Because of the government's threat, Lewellen cannot publish the software he worked so hard on, launch his business, or help charitable causes.

Lewellen's claims are not impermissibly "abstract and hypothetical." *Braidwood*, 70 F.4th at 930. There are no "additional fact[s]" needed. *Id.* at 929. Courts routinely adjudicate preenforcement challenges based on future business plans impeded by a challenged policy, even though those business plans are necessarily subject to change. *See, e.g.*, *Crown Castle Fiber v. City of Pasadena*, 76 F.4th 425, 437 (5th Cir. 2023) ("no further factual development" needed about business's general plan to develop a communications network in the region). Indeed, no further factual development is even possible because there are no further steps that Lewellen can take without risking liability. *Cf. MedImmune*, 549 U.S. at 128-29. Lewellen's claims are ripe.

### C.    Sovereign immunity does not bar this suit.

Despite the government's argument below, ROA.127-28; ROA.269, sovereign immunity does not bar Lewellen's suit either. It does not apply here for two reasons.

First, the Acting Attorney General lacks sovereign immunity for ultra-vires actions. ROA.12 ¶5. Sometimes called the "'ultra vires exception to sovereign immunity,'" this Court's precedent provides that "where the officer's powers are limited by statute,

32

his actions beyond those limitations are considered individual and not sovereign actions," so they "'may be made the object of specific relief.'" *Apter v. HHS*, 80 F.4th 579, 587 (5th Cir. 2023); *accord Dalton v. Specter*, 511 U.S. 462, 472 (1994). In this context, "suits for specific relief against officers of the sovereign," like the Attorney General, "are not suits against the sovereign." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *accord Chamber of Com. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996). Put simply, an officer "not doing the business which the sovereign has empowered him to do" cannot claim the sovereign's immunity. *Larson*, 337 U.S. at 689.

Lewellen's claims thus can proceed, independent of any waiver of sovereign immunity or any showing of "agency action," because the Acting Attorney General has no immunity in the first place. *See Larson*, 337 U.S. at 689; *Reich*, 74 F.3d at 1329. Lewellen alleges that the defendant's actions are "'beyond his statutory powers,'" *Dalton*, 511 U.S. at 472, because Pharos is not an "unlicensed money-transmitting business," ROA.37-40 ¶¶95-105. And Lewellen seeks a declaration and injunction stopping the Acting Attorney General from prosecuting him for publishing Pharos. ROA.47-48. His claim is therefore "not [a] sui[t] against the sovereign," *Larson*, 337 U.S. at 689, and the Acting Attorney General "'may be made the object of [the] specific relief'" that Lewellen seeks, *Apter*, 80 F.4th at 587.

Second, sovereign immunity does not bar Lewellen's suit because Congress has waived sovereign immunity via the APA. To invoke §702's waiver in this circuit, a plaintiff need only be "'adversely affected'" by an "'agency action.'" *Apter*, 80 F.4th at 589;

*cf. Texas v. DHS*, 88 F.4th 1127, 1134 (5th Cir. 2023), *vacated*, 144 S. Ct. 715 (2024).

Qualifying actions include the "whole or a part," 5 U.S.C. §551(13), of any "manner in

which an agency may exercise its power," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457,

478 (2001). The action need not be final to waive sovereign immunity. 5 U.S.C. §702;

*Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 599 (N.D. Tex. 2021). And the

action can be "nonbinding." *Apter*, 80 F.4th at 591. Even social-media posts can count.

*Id.* at 583, 586-91.

Lewellen alleges several agency actions that have contributed to his injury, any

one of which suffices to trigger the APA's waiver:

- public statements by the Attorney General and the Justice Department threat-
  ening software developers like Lewellen with criminal punishment for pub-
  lishing software programs like Pharos. (*See, e.g.*, ROA.34 ¶85.)

- prior "'enforcement action[s].'" *Bear Creek*, 571 F. Supp. 3d at 599; *cf.* 5 U.S.C.
  §551(13) (defining agency action to include "order[s]" and "sanction[s]").

- the government's assertion that, under its interpretation of §1960, noncusto-
  dial software developers like Lewellen can be prosecuted. (*See, e.g.*, *Storm*,
  Doc.53 at 34; *Rodriguez*-Doc.118 at 32-33.)

Lewellen is "adversely affected" by these actions, 5 U.S.C. §702, because he falls

within the "zone of interests" of the government's action, *Apter*, 80 F.4th at 589-90.

Lewellen has a "cause of action." *Lexmark Int'l v. Static Control Components*, 572 U.S. 118,

127 (2014). And because he proceeds under the Declaratory Judgment Act, Lewellen

can rely on the government's cause of action against him. *See Braidwood*, 70 F.4th at 932-

33; *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("[T]he underlying

cause of action which is thus actually litigated is the declaratory defendant's"). The government has a cause of action because it can prosecute violators of §1960(b). *See* 18 U.S.C. §3231; 28 U.S.C. §§509-510. Sovereign immunity thus does not bar Lewellen's claims.

## CONCLUSION

This Court should reverse the district court on standing and remand.

Dated: July 1, 2026

*/s/ Cameron T. Norris*
Cameron T. Norris
David J. Wenthold
Zachary P. Grouev
CONSOVOY MCCARTHY, PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
dwenthold@consovoymccarthy.com
zach@consovoymccarthy.com

J. Abraham Sutherland
106 Connally Street
Black Mountain, NC 28711
(805) 689-4577

*Counsel for Appellant Michael Lewellen*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7) because it contains 8,655 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: July 1, 2026                    */s/ Cameron T. Norris*


## CERTIFICATE OF SERVICE

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

Dated: July 1, 2026                    */s/ Cameron T. Norris*