# 26-10312

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**Michael Lewellen**,
Plaintiff-Appellant

v.

**Todd Wallace Blanche, U.S. Attorney General**,
Defendant-Appellee

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
District Court No. 4:25-CV-30-O

## BRIEF FOR APPELLEE

RYAN RAYBOULD
UNITED STATES ATTORNEY

Najib H. Gazi
Assistant United States Attorney
Texas State Bar No. 24131329
Brian W. Stoltz
Assistant United States Attorney
Texas State Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8672
Facsimile: 214.659.8811
najib.gazi@usdoj.gov
brian.stoltz@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

At issue in this appeal is the district court's Rule 12 dismissal of pre-enforcement claims asserted against the government under the Declaratory Judgment Act. The plaintiff alleged that he faced a substantial threat of government prosecution if he released his alleged cryptocurrency software, but the district court found that no credible threat of prosecution was shown, and thus that standing was lacking. The relevant portion of the record is short and not complex, and the legal issues are straightforward; it is therefore respectfully submitted that this appeal can be decided without the need for oral argument.

# TABLE OF CONTENTS


Statement Regarding Oral Argument ....... i

Table of Authorities ....... iii

Introduction ....... 1

Statement of Jurisdiction ....... 2

Statement of the Issues ....... 2

Statement of the Case ....... 3

1. Lewellen files a pre-enforcement suit claiming that DOJ will prosecute him for releasing his purported cryptocurrency software. ....... 3

2. DOJ moves to dismiss. ....... 4

3. The district court concludes that Lewellen lacks standing and dismisses his claims. ....... 6

Standard of Review ....... 8

Summary of the Argument ....... 8

Argument and Authorities ....... 9

1. The district court properly dismissed for lack of standing based on its conclusion that Lewellen failed to show a credible threat of prosecution. ....... 10

2. Alternately, Lewellen's claims are not redressable and are not ripe. ....... 21

Conclusion ....... 31

Certificates of Services and Compliance ....... 33

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ........ 26

*Braidwood Mgmt., Inc. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) ........ 20, 27

*California v. Texas*,
593 U.S. 659 (2021) ........ 21, 24

*Califano v. Sanders*,
430 U.S. 99 (1977) ........ 26

*Cornerstone Christian Schs. v. Univ. Interscholastic League*,
563 F.3d 127 (5th Cir. 2009) ........ 8

*DM Arbor Ct., Ltd. v. City of Houston*,
988 F.3d 215 (5th Cir. 2021) ........ 26

*Haaland v. Brackeen*,
599 U.S. 255 (2023) ........ 22, 24, 25

*Joint Heirs Fellowship Church v. Akin*,
629 F. App'x 627 (5th Cir. 2015) ........ 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 10

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........ 27, 31

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ........ 29

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ........ 19

*Paxton v. Dettelbach*,
105 F.4th 708 (5th Cir. 2024) ........ 13

*Paxton v. Restaino*,
683 F. Supp. 3d 565 (N.D. Tex. 2023) ............................................13, 31

*Pearson v. Holder*,
624 F.3d 682 (5th Cir. 2010)........................................................26, 28

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020)........................................................11, 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................ 10

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998) .......................................................................... 22

*Texas v. United States*,
497 F.3d 491 (5th Cir. 2007)............................................................ 27

*Thomas v. Union Carbide Agr. Prods. Co.*,
473 U.S. 568 (1985)........................................................................ 27

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017)........................................................................ 10

*Umphress v. Hall*,
133 F.4th 455 (5th Cir. 2025)............................... 6–7, 11, 16, 18, 19, 28

*United States v. Juvenile Male*,
564 U.S. 932 (2011)........................................................................ 23

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ........................................................... 10, 11, 21

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)........................................................................ 31

**STATUTES AND REGULATIONS**

18 U.S.C. § 1960 ..................................................................2, 3, 8

18 U.S.C. § 1960(b)(1)(C) ................................................................ 14

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 2201(a) .......... 31

31 C.F.R. § 1010.711 .......... 20, 30

31 U.S.C. § 5330(e) .......... 25

## INTRODUCTION

Plaintiff-appellant Michael Lewellen seeks declaratory relief against the Attorney General to shield himself from hypothetical future prosecution if he releases his alleged cryptocurrency software, Pharos. But Lewellen identifies no investigatory steps—much less prosecutorial ones—taken by the Department of Justice (DOJ) against him or Pharos. Indeed, he does not even allege that DOJ knew about Pharos prior to his filing of this suit.

Lewellen nonetheless claims that an Article III court must weigh in on his unreleased software because federal prosecutors in the Southern District of New York (SDNY) prosecuted the developers of separate applications known as Tornado Cash and Samourai Wallet for *knowingly* transmitting criminal proceeds. Those criminal proceeds included funds from illegal dark web markets such as Silk Road, wire fraud and computer fraud schemes, web server intrusions, phishing attacks, identity theft, illegal narcotics, and funds transferred on behalf of sanctioned entities such as the Lazarus Group, a North Korean cybercrime organization.

In stark contrast, Lewellen disclaims *any* intent to transmit criminal proceeds. As the district court explained, Lewellen's alleged core conduct is running a business, whereas the core conduct of the prior prosecutions cited by Lewellen was knowing money laundering. And a surface-level similarity of

technology (even if assumed to exist) is not similarity of conduct. Both the prior prosecutions and the current administration's enforcement priorities demonstrate there is no substantial threat of prosecution here. Accordingly, the district court was on firm ground in concluding that Lewellen lacked standing, and this Court should affirm the judgment.

## STATEMENT OF JURISDICTION

Relying on the Declaratory Judgment Act, Lewellen sued the Attorney General for declaratory relief to shield himself from federal prosecution if he released his alleged cryptocurrency software. (ROA.10.) The district court determined that no jurisdiction existed and granted the government's Rule 12 motion (ROA.296–301), with final judgment entered on March 25, 2026 (ROA.9, 302). Lewellen timely filed his notice of appeal on April 3, 2026. (ROA.9, 303.) This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Did the district court err in dismissing Lewellen's suit for lack of Article III standing after determining that Lewellen failed to demonstrate a substantial threat of future government enforcement of 18 U.S.C. § 1960?

## STATEMENT OF THE CASE

### 1. Lewellen files a pre-enforcement suit claiming that DOJ will prosecute him for releasing his purported cryptocurrency software.

Michael Lewellen is a self-described cryptocurrency expert who alleges that he developed a cryptocurrency software called Pharos. (ROA.18.) Pharos is sad to enable the use of cryptocurrency to crowdfund campaigns by acting as an intermediary gatekeeper. (ROA.18–23.) Pharos requires that a minimum donation amount is met; if the minimum amount is never achieved, all donors are refunded their entire donated balance. (ROA.23–24.) Lewellen describes Pharos as a "non-custodial" cryptocurrency: others can move digital assets, but he allegedly will have no control, possession, or direction over the transferred currency. (ROA.10.) Lewellen initiated this pre-enforcement action against the Attorney General in an official capacity (hereinafter referred to as DOJ) claiming that the government will prosecute him under 18 U.S.C. § 1960 if his cryptocurrency software is released. (ROA.11–12.)

Citing the federal prosecutions of the developers of Samourai Wallet and Tornado Cash for money laundering and sanctions violations, Lewellen argued that he had a similar fear of prosecution by characterizing the government's conduct in both cases as "*criminally prosecuting* [the developers of Samourai and Tornado Cash] for publishing similar cryptocurrency software [to his own.]" (ROA.10); *see United States v. Storm*, No. 23-cr-430 (S.D.N.Y.

Aug. 21, 2023) (Tornado Cash Prosecution); *United States v. Rodriguez*, No. 24-cr-82 (S.D.N.Y. Feb. 14, 2024) (Samourai Wallet Prosecution). Lewellen pointed to no other evidence that he may be prosecuted.

Lewellen did suggest that Pharos was "similar" to Samourai Wallet and Tornado Cash by characterizing all three applications as "non-custodial" "cryptocurrency software." (ROA.10–11, 31–33.) And Lewellen further stated that he refuses to "register his business as a federal money transmitter" because "it w[ould] be impossible to comply with the reporting requirements that registration would demand." (ROA.25.) "[A]s a mere publisher of non-custodial software," Lewellen claimed an inability to "access . . . the information about users that compliance would require." (ROA.25.) Thus, according to Lewellen, the sole path to alleviate his fear of prosecution was declaratory relief in federal court. (ROA.10–48.)

**2. DOJ moves to dismiss.**

DOJ filed a motion to dismiss under Rule 12(b)(1), arguing that there was no subject matter jurisdiction over Lewellen's claims because he could not establish Article III standing and, additionally, that his claims were not ripe nor was redressability present. (ROA.128–42.) DOJ further argued under Rule 12(b)(6) that Lewellen failed to state a claim on his First Amendment and Fifth Amendment claims because his conduct—moving money between

parties for a fee—was not inherently expressive, and because the government's prosecutions and guidance from the Treasury Department's FinCen agency were not in conflict with each other, respectively. (ROA.142–47.)

The government first highlighted that Lewellen had not suffered an injury in fact. Lewellen could not show a substantial likelihood of prosecution because the prior prosecutions were materially different than Lewellen's alleged circumstances and the then-Deputy Attorney General's memorandum (sometimes referred to as the Blanche Memo) set forth enforcement priorities that did not target, or arguably even proscribe, Lewellen's conduct. (ROA.129–33, 135–36.) Lewellen did not allege that "he has been threatened with prosecution[,]" or even that there was "a single investigative action . . . oriented toward [Pharos or Lewellen]." (ROA.131.)

DOJ further noted that even if Lewellen had identified some concrete injury, he could not demonstrate that it was redressable. This was because Lewellen had not named FinCEN as a party in this suit, and therefore could not obtain meaningful relief because FinCEN—which would not be bound by any ruling in this case—could still independently take enforcement action for money-transmitting violations, even if a court did grant the relief Lewellen sought against DOJ. (ROA.138–39.) DOJ also explained that there were various factual issues that also counseled against premature adjudication of

Lewellen's claim, including because Lewellen had never engaged in FinCEN's advisory opinion process to clarify any ambiguities in the agency's guidance or to allow the government to independently verify how his platform would operate. (ROA.138–42.)

### 3. The district court concludes that Lewellen lacks standing and dismisses his claims.

After receiving further responses and replies from the parties, the district court issued a memorandum opinion and order granting the motion to dismiss. (ROA.296.)

The district court held that Lewellen failed to show a substantial threat of prosecution under § 1960 and therefore could not prove that he had standing to bring a pre-enforcement claim. (ROA.299–301.) The district court rejected the argument that the Samourai Wallet and Tornado Cash prosecutions indicated a credible threat of prosecution to Lewellen, just because they shared a "similar non-custodial cryptocurrency technology" with Pharos. (ROA.299.) Grounding its analysis in the stark differences between the SDNY cryptocurrency prosecutions and Lewellen's alleged business, the district court explained that the circumstances of the SDNY prosecutions were not "substantially similar" to Lewellen's alleged intended conduct so as to justify pre-enforcement action. (ROA.300 (quoting *Umphress v. Hall*, 133 F.4th 455, 466 (5th Cir. 2025)).)

First, the district court distinguished that the core conduct of the prior cryptocurrency prosecutions involved money laundering, whereas Lewellen's conduct would be "running a business." (ROA.300.) Lewellen had "disclaim[ed] any knowing transmission of criminal funds, which is central to the prosecutions he invokes." (ROA.300.) Separately, the district court also noted that, although issued after Lewellen filed suit, the DOJ's memorandum "formally declaring" that the agency would not pursue claims against "virtual currency exchanges [and] mixing and tumbling services . . . for the acts of their end users or unwitting violations of regulations" was "the exact scenario over which Lewellen brought this suit." (ROA.300 (internal quotations omitted).)

The district court also explained that "[t]he critical inquiry is the underlying nature of the conduct, not the mechanism by which the conduct is carried out." (ROA.300.) The district court concluded that "targeting money laundering does not establish a credible threat of prosecution against a business simply because it uses a non-custodial cryptocurrency software." (ROA.300–301.) "Without more," the district court held, Lewellen's "general fear of prosecution . . . cannot substitute for the presence of an imminent, non-speculative irreparable injury." (ROA 301 (citation omitted)).

Finding standing to be absent, the district court entered a final judgment dismissing all of Lewellen's claims without prejudice. (ROA.302.) This

appeal follows.

## STANDARD OF REVIEW

A district court's dismissal for lack of standing is reviewed de novo. *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009).

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Lewellen's pre-enforcement challenge for lack of standing. The district court recognized that Lewellen "[did] not show a credible threat of prosecution" under 18 U.S.C. § 1960 and therefore did "not have standing to bring his pre-enforcement challenge." (ROA.301 (internal quotations omitted).) And Lewellen's invocation of the two prosecutions from SDNY was properly held unavailing, as those prosecutions involved money laundering, sanctions violations, and the knowing transmission of criminal proceeds (the latter of which have since been proven at trial or admitted under oath), whereas Lewellen disclaimed any intent to knowingly transmit criminal proceeds. Lewellen fails to show any error in the district court's standing analysis, and the Court therefore need go no further and can affirm on that ground.

Lewellen's claims also were not suitable for Article III adjudication for additional reasons that the district court did not need to address. First,

redressability is absent. Lewellen does not want to be investigated or prosecuted, but the relief he seeks would not head off all potential enforcement actions. His failure to name FinCEN in this action means that even if DOJ were enjoined from pursuing criminal prosecution, nothing would stand in FinCEN's way of taking independent enforcement action to impose substantial monetary penalties against any hypothetical future violations arising from whatever yet-unknown software system Lewellen might release.

Second, his claims are not ripe, as further factual development related to his proposed Pharos program and his associated conduct would be necessary—at a minimum—before any meaningful understanding of the possible interplay between Pharos and federal criminal law would be possible. Engaging with FinCEN's administrative process would potentially have aided in ripening any hypothetical future dispute by providing appropriate factual context and a clear legal framework. But Lewellen refused to engage with FinCEN, which provides a prudential reason to abstain from prematurely deciding any alleged hypothetical dispute.

The district court's judgment should be affirmed.

## ARGUMENT AND AUTHORITIES

The district court correctly held that Lewellen had not established any injury in fact to support standing, because there is no credible threat of

prosecution under the facts as alleged. The Court can affirm for this reason alone and need go no further, but additional grounds that the district court did not reach also support the judgment.

**1. The district court properly dismissed for lack of standing based on its conclusion that Lewellen failed to show a credible threat of prosecution.**

Lewellen must establish that standing exists to invoke federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Lewellen must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). He "must demonstrate standing *for each claim* he seeks to press and *for each form of relief* that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (emphasis added; internal quotation marks and citation omitted). As the district court correctly held, Lewellen has not suffered an injury in fact because there is no credible threat of prosecution.

There is no "unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). A mere "chilling effect" on a plaintiff, whereby the individual refrains from certain activity, is "insufficient to justify federal intervention in a pre-enforcement suit." *Id.* at 50 (citation and internal

quotation marks omitted). Instead, Plaintiffs must establish a "concrete injury." *Id*. To establish this type of injury, the individual plaintiff must show (1) that they have "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that their "intended future conduct is arguably proscribed by the policy in question," and (3) that "the threat of future enforcement of the challenged policies is substantial." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (cleaned up).

To establish an injury sufficient for standing, Lewellen must show "that there is a substantial threat that [DOJ] would enforce [§ 1960] against him." *See Umphress*, 133 F.4th at 465–66. But here, Lewellen and his proposed product as alleged are far afield from other § 1960 prosecutions in the cryptocurrency space; the Deputy Attorney General has directed DOJ not to prioritize mere regulatory violations; and Lewellen concedes that not a single investigative step has been taken against him. For these reasons, and as discussed in further detail below, there is no injury in fact to support Article III jurisdiction at this time.

1. As an initial matter, it should be recognized that Lewellen's claims depend on the following two propositions which, it is respectfully submitted, are mutually exclusive and instead demonstrate why no jurisdiction exists here:

- On the one hand, Lewellen avers that he is a law-abiding citizen who disclaims any intent to knowingly transport or transmit criminal funds using his cryptocurrency software. (ROA.10–11.)
- On the other hand, Lewellen seeks to portray himself as similarly situated to the Tornado Cash and Samourai Wallet developers who (1) conspired to commit money laundering and sanctions violations by facilitating the transfer of funds by North Korean cybercrime organizations and illegal dark web markets; (2) knowingly transported criminal proceeds originating from wire fraud schemes, cybercrimes, illegal narcotics, identity theft, and other illegal schemes, (3) contemplated that their intended customer base and revenue stream would be "Illicit Activity," "Restricted Markets," and "Dark/Grey Market Participants," (4) solicited criminal proceeds from hackers who had compromised Twitter accounts and Russian oligarchs seeking to circumvent sanctions, (5) described their services as "Money laundering for bitcoin" and "[s]tump[ing] the blacklists," (6) rejected attempts by victims to block or trace stolen funds that were transferring through their platforms, and (7) designed the business "from the beginning" to assist criminals in transmitting illicit proceeds.

Indictment, *United States v. Storm et al.*, 23-cr-430, ECF No. 1, ¶¶ 1, 45-49 (S.D.N.Y. Aug. 21, 2023); Indictment, *United States v. Rodriguez et al.*, 24-cr-82, ECF No. 4, ¶¶ 1, 14-17, 20, 21, 27, 28 (S.D.N.Y. Feb. 14, 2024); Letter to the Court, *id.*, ECF No. 88 at 2; Sentencing Hearing, *id.*, ECF No. 166 at 9-10.

Against this backdrop, it is clear that Lewellen fails to show any basis for a pre-enforcement challenge. Lewellen must allege more than the mere fact that the government has prosecuted individuals for violations of § 1960. *See Paxton v. Restaino*, 683 F. Supp. 3d 565, 569 (N.D. Tex. 2023) (holding that, despite history of possession of unregistered silencers prosecutions, plaintiffs failed to allege substantial risk of prosecution because they had not engaged in or attempted illegal conduct, and had not shown that they had been threatened with prosecution or that it was likely), *aff'd sub nom. Paxton v. Dettelbach*, 105 F.4th 708 (5th Cir. 2024). But Lewellen alleges no facts beyond a scarce history of dissimilar enforcement.

A closer look at the facts of the Tornado Cash and Samourai Wallet prosecutions is also illuminating and further demonstrates why the district court was correct to decline to entertain a pre-enforcement challenge here. The developers of Tornado Cash and Samourai Wallet were convicted of violating 18 U.S.C. § 1960(b)(1)(C). Lewellen glosses over what a conviction under this

provision requires as simply "an extra knowledge requirement" (Br. at 11), but the statutory text speaks for itself and makes clear that having the requisite knowledge of the criminal nature of the conduct occurring on the platform is a key element of the offense:

> (1) [T]he term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
>
> . . .
>
> (C) otherwise involves the transportation or transmission of funds **that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity**;

18 U.S.C. § 1960(b)(1)(C) (emphasis added).

The developers of Samourai Wallet admitted (1) that they operated a business where criminal proceeds were being stored and transferred, but nonetheless agreed with their co-conspirators to continue transmitting the criminal proceeds knowing that the funds were derived from criminal activity, (2) that their business assisted in obscuring the ownership of the criminal proceeds, and (3) that the funds were intended to be used to promote and support unlawful activity. *See, e.g.*, *Rodriguez*, Plea Allocution, ECF No. 149 at 8–9, 15–16. And at sentencing, the court and AUSA noted that the defendants had specifically "marketed [the business] to the criminal world"; "designed Samourai to help criminals evade detection"; "were proud" of criminals using

Samourai; offered criminals a discount to use their services; "criticized competitor mixers for inadequately concealing crime proceeds" because they "would lead to people getting locked up"; and that the "intent at least in significant part from the beginning" was to assist criminals in concealing their illicit proceeds. *Rodriguez*, Sentencing Hearing at 8–10. Every one of these allegations was confirmed by Samourai Wallet's founder. *Id.* at 14 (counsel's statement that "[a]ll the things [the AUSA] just mentioned we acknowledge").

In the Tornado Cash proceedings, the government also confirmed that the mere creation and launching of software is not a crime. *Storm*, Hearing on Motion to Acquit, ECF No. 290 at 38–39 (AUSA confirming that Storm and his colleagues did not commit a crime in developing and launching Tornado Cash). The evidence at the Tornado Cash trial also differed substantially from Lewellen's description of Pharos, over which he claims to have no control. In contrast, it is incorrect "to claim that Tornado Cash was nothing more than a 'decentralized' protocol consisting of the immutable pools"; rather, "overwhelming evidence [showed] that [Storm] and his co-conspirators exercised control over most aspects of Tornado Cash and used that control to facilitate criminal transactions and to enrich themselves." *Storm*, Government's Br. Opp. Mot. Acquit, ECF No. 241 at 1–2. The government's position was that "the defendant's affirmative conduct violated the law," and

the jury was never instructed on a negligence theory. *Id*. at 3. The government then presented evidence at trial showing that the defendant had knowledge of the criminal proceeds being transmitted through their business, continued to improve the service knowing that it was being used for criminal activity, and monetized the resulting stream of funds directed by criminals into their platform. *Storm*, Hearing on Motion to Acquit, ECF No. 290 at 42–43.

Lewellen would have this Court pick one allegedly similar fact between himself and the prior prosecutions while ignoring dozens of dissimilar facts. This flips the "core conduct" analysis on its head. Lewellen cannot analogize himself to individuals who built entire enterprises to facilitate the transmission of criminal proceeds while he disclaims any intent to knowingly transmit criminal proceeds. He cannot rely on the Tornado Cash and Samourai Wallet prosecutions to establish a credible threat of prosecution.

2. Second, the Deputy Attorney General's directive (the Blanche Memo) reinforces that there is no real threat of prosecution to Lewellen.[1] DOJ has disclaimed any intention to prosecute cryptocurrency services "for the acts

[1] Lewellen suggests that the government avoids arguing mootness because the government cannot satisfy its stringent requirements. (Br. at 29.) But the mootness inquiry is not applicable because the government contends that this dispute was never live to begin with, and the government has not ceased any action against Lewellen because it never took any action against him at all. *See Umphress*, 133 F.4th at 469 ("The central mootness question is whether decision of a *once living dispute* continues to be justified by a sufficient prospect that the decision will have an impact on the parties." (cleaned up and emphasis added)).

of their end users or unwitting violations of regulations," and instead has trained its focus on those using "digital assets in furtherance of criminal offenses such as terrorism, narcotics and human trafficking, organized crime, hacking, and cartel and gang financing."[2] Lewellen believes that despite this directive, he has standing unless DOJ reverses its prosecutions of the convicted money launderers and sanctions violators in the SDNY and unconditionally disclaims any intent to enforce § 1960 against him. (Br. at 20–21, 23–24.) Despite asserting that he has no intent to engage in or facilitate the above crimes, he argues that the Blanche Memo confirms the risk of prosecution. But as discussed above, he is not similarly situated to individuals who have been prosecuted. And DOJ has already set forth the bases on which it will prosecute under § 1960, and Lewellen alleges he will not fall into any of them. DOJ has also already committed to "not pursu[ing] actions against the platforms that these [unlawful] enterprises utilize to conduct their illegal activities," and has ordered any "[o]ngoing investigations that are inconsistent with the [memo] [to] be closed."[3] It is unclear what more confirmation Lewellen wants.

The fact also remains that the only public information about Pharos

---

[2] *See* https://www.justice.gov/dag/media/1395781/dl?inline (visited Aug. 31, 2026).

[3] *See* https://www.justice.gov/dag/media/1395781/dl?inline (visited Aug. 31, 2026).

appears to come from press releases trumpeting this lawsuit. It is unrealistic to require the government to choose between facing burdensome litigation and discovery or issuing a specific disclaimer for a program with no independent public analysis at the cutting-edge of a complex field. If Lewellen does not specifically intend to transport criminal funds using Pharos, it is unclear what he has left to fear.

Lewellen's complaint that the district court improperly relied on the Blanche Memo also rings hollow. He argues that the district court should not have relied on a document that was issued after the suit began because standing is determined as of the date the complaint is filed. But the district court acknowledged that "this memorandum was published after [Lewellen] brought this suit," and explained that it "align[ed] with the reason why Plaintiff did not have a credible fear of prosecution *at the time of filing*," rather than serving as an independent basis for the lack of standing. (ROA.300 (emphasis added).) No error in the district court's analysis is shown.

3. Third, Lewellen did not, and still does not, face a substantial likelihood of prosecution. Section 1960 is challenged here on an as-applied basis because "[Lewellen] does not seek to invalidate the [statute] in all its applications." *See Umphress*, 133 F.4th at 465. Rather, he "seeks a remedy confined to his particular factual circumstances." *Id.* Because Lewellen's

challenge is on an as-applied basis, "he must show some evidence that there is a substantial threat that [DOJ] would enforce [the statute] against him." *Id.* "The distinction between facial and as-applied challenges bears legal significance": "Whereas there must be some evidence that a rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge, that is not the case for facial challenges." *Speech First*, 979 F.3d at 334–35 (cleaned up).

A plaintiff cannot establish a substantial threat of enforcement when he does not prove "any imminent or even credible threat of prosecution" under a statute, and the record supports the inference that the statute is not likely to be enforced against him. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024). For a plaintiff to prevail in establishing a substantial threat of enforcement, typically he must show some history of government enforcement to demonstrate a credible fear that the statute will be enforced. This appears in a variety of ways, such as a "clear shot across the bow" against potential violators, *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 927 (5th Cir. 2023), or where a "statute has already been enforced against a plaintiff" or where an agency has "issued an advisory opinion on the relevant statute's meaning, intended enforcement, and recently enforced the statute against another party," *Joint Heirs Fellowship Church v. Akin*, 629 F. App'x 627, 631 (5th

Cir. 2015). None of these factors is present here.

Instead, Lewellen's case is incomparable to these examples because his allegations boil down to only a generalized fear of prosecution under the statute. However, "a general fear of prosecution" is not "the presence of an imminent, non-speculative irreparable injury." *Braidwood*, 70 F.4th at 926 (citation omitted). Indeed, he has not alleged a single enforcement or even investigatory action taken against him.

Lewellen does not allege that he was threatened with prosecution. Nor does he assert that the DOJ took any investigative action that is oriented toward him or his prospective cryptocurrency business. He does not allege an indictment is imminent, nor that he received a target letter from the DOJ. Nor does he assert that he is the subject of any investigation into Pharos. Lewellen never even asked the DOJ or FinCEN for an advisory opinion. Under 31 C.F.R. § 1010.711, Lewellen could have submitted facts about his business to FinCEN to ask for an administrative ruling on whether Pharos should register as a money transmitter. He did not do so.

Lewellen concedes that no investigative actions have been taken against him. (*See* ROA.181.) Lewellen is not entitled to unqualified pre-enforcement review. *See Whole Woman's Health*, 595 U.S. at 49–50. His fear alone is not sufficient to create an injury in fact. Accordingly, his claims must be dismissed

for lack of standing.

* * *

To sum up, Lewellen was required to identify some credible threat of prosecution to support a pre-enforcement challenge, but he did not do so and cannot do so. He lacks standing, and therefore the district court properly dismissed this suit for lack of jurisdiction.

**2. Alternately, Lewellen's claims are not redressable and are not ripe.**

Lewellen's inability to show a credible threat of prosecution mandated dismissal, and this Court need go no further to affirm. As discussed below, though, dismissal would also have been appropriate on two other grounds: due to the lack of redressability and because any claim was unripe.

**A. Lewellen's alleged injury is not redressable in this action.**

"To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (cleaned up). An "acceptable Article III remedy" must "redress a cognizable article III injury." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 107 (1998). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Id*. If the remedy sought cannot give the plaintiff "legally enforceable protection from the allegedly imminent harm," the injury is not likely to be redressed by

judicial relief. *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023). "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.* at 294.

The redressability element is not satisfied here because there is no way for any court to effectively issue a judgment that would redress Lewellen's alleged harm of future investigations or enforcement actions. The first limitation in this regard arises from the undisputed facts that Lewellen's business is not yet in existence, his code is not public, and there has been no independent analysis of how Pharos actually operates. Small changes in code can completely alter the character of a software program. If Lewellen alters the user interface to provide a function that is not included in the complaint's allegations, would any injunction Lewellen might obtain now still apply to any enforcement actions? Would the government have to request a modification of the injunction (which would be public and therefore prematurely tip off the subjects of any criminal investigation) prior to investigating if Lewellen's business model was not the same as what he presented in this action?

Even if a court agreed with Lewellen's reasoning that control is a necessary element under § 1960, the lack of certainty as to Lewellen's business model would limit the scope of any hypothetical judgment in Lewellen's favor. No such judgment could conclusively head off enforcement actions against

Lewellen and Pharos, leaving Lewellen's alleged harms of potentially facing criminal prosecution or other regulatory actions after opening his business unremedied. Nor can the possible benefits that Lewellen may gain by invoking a court decision dealing with hypothetical facts in a future prosecution preserve standing in this suit. *See United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (A "possible, indirect benefit in a future lawsuit" could not save standing in the case at issue.).

Moreover, because Lewellen seeks an injunction only against the money-transmitter statutes, in his hypothetical rendering he would still theoretically be subject to investigation for potential money laundering or national security sanctions violations (or conspiracy to commit those violations) that occur on his platform. Any injunction that engages with these practical realities would have to be so narrow and conditional in nature that there would be no meaningful protection. Prudence, not to mention the constraints of Article III, counsel against judicial intervention, and instead require the parties to wait for some concrete dispute—if one ever comes into existence, which is hardly a given—to arise over an established set of facts. The alleged risk of investigations to Lewellen's business model is not one that can be remedied in federal court without overstepping Article III's bounds.

Further, even if an injunction prohibiting the Attorney General from

enforcing the money-transmitting laws against Lewellen were issued, Lewellen would still be subject to potential investigation and enforcement by FinCEN. FinCEN has independent enforcement authority and may penalize entities for acting as money services businesses and money transmitters without registering.[4] Lewellen has not named FinCEN as a party, and therefore FinCEN would not be bound by any injunction issued in this case preventing enforcement against Lewellen or his business. *See California*, 593 U.S. at 672 ("Remedies, however, ordinarily operate with respect to specific parties [and] do not simply operate on legal rules in the abstract." (cleaned up)); *Haaland*, 599 U.S. at 293 ("[T]here is no reason [non-parties to a suit] should be obliged to honor an incidental legal determination the suit produced." (cleaned up)). The same analysis applies to Lewellen's request for a declaratory judgment. *Haaland*, 599 U.S. at 293. That FinCEN may choose to "defer to a federal court's interpretation of federal law, thus giving rise to a substantial likelihood that a favorable judgment will redress their injury" is not sufficient, as "[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the

[4] *See, e.g.*, https://www.fincen.gov/money-services-business-definition (visited Aug. 23, 2026) (defining Money Services Business to include Money Transmitters); https://www.fincen.gov/enforcement-actions-failure-register-money-services-business (visited Aug. 31, 2026) (compiling a list of FinCEN's enforcement actions for failing to register as a Money Services Business).

opinion *explaining* the exercise of its power." *Id.* at 293–94, 294 (cleaned up). Even if completely successful on his claims in all respects, Lewellen would not receive any legally enforceable protection against such alleged harm, the enforcement of the money-transmission statutes, and he therefore lacks standing.

Lewellen's attempts to show otherwise are unavailing. Lewellen assured the district court that enjoining DOJ from taking enforcement action would be sufficient to remedy his alleged injury, which he characterized as not being able to open his business.[5] (ROA.184.) But this argument is implausible. "Any person who fails to comply with any requirement of [§ 5330] or any regulation prescribed under [§ 5330] shall be liable to the United States for a civil penalty of $5,000 for each such violation," and each day the violation continues counts as a separate violation. 31 U.S.C. § 5330(e). It is not plausible that Lewellen would open his business if FinCEN fined him over $1.8 million every year pursuant to § 5330(e). Successful enforcement actions by either FinCEN or DOJ would therefore have the same effect: Lewellen would close his business. Accordingly, meaningful relief would not have been

[5] This assurance also hinges on FinCEN adopting his interpretation of the money-transmitter registration requirements, but his assertions that FinCEN would agree with him are both conclusory and legal conclusions masquerading as factual allegations. Lewellen incorporates the FinCEN guidance by reference into his complaint, so this Court may analyze the guidance directly.

possible in this litigation (even if standing existed) without naming FinCEN.

**B. Lewellen's claim are not yet ripe.**

"Ripeness ensures that federal courts do not decide disputes that are premature or speculative." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (cleaned up). The ripeness doctrine prevents courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977). A case is ripe when it "would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (cleaned up). "The ripeness inquiry reflects Article III limitations on judicial power as well as prudential reasons for refusing to exercise jurisdiction." *DM Arbor*, 988 F.3d at 218 (cleaned up).

The constitutional component of ripeness overlaps with the case or controversy requirement for Article III standing. *See id.* at 218 n.1. "Even when constitutional ripeness is satisfied, however, a court may decide not to hear a case for prudential reasons, such as problems of prematurity and abstractness." *Id*. (cleaned up). "To determine if a case is ripe for adjudication" based on prudential considerations, "a court must evaluate (1)

the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007). A claim is "premature," and thus unripe, when it "involve[s] contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580, 580–81 (1985) (cleaned up).

Lewellen cites two cases to argue that if standing is satisfied, then the dispute is ripe. (Br. at 30, 31 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) ("And in pre-enforcement cases, 'standing and ripeness boil down to the same question.'"), and *Braidwood*, 70 F.4th at 930 n.28 ("'It remains unclear whether a court can reject a claim as unripe once plaintiffs have established Article III standing.'" (cleaned up)).) But neither authority supports any relief to Lewellen here.

First, *MedImmune* is inapplicable. The Supreme Court in *MedImmune* stated that "[*a*]*s respondents acknowledge*, standing and ripeness boil down to the same question *in this case*." 549 U.S. at 128 n.8 (emphasis added). But the government does not concede that standing and ripeness are the same here. The ripeness inquiry asks whether the issues would "benefit from any further factual development" and whether "the court would be in no better position to adjudicate the issues in the future than it is now." *Pearson*, 624 F.3d at 684

(citation and quotation marks omitted). The standing inquiry partially overlaps but does not fully encompass the ripeness issues raised by the government here.

And as for *Braidwood*'s statement, this Court stated in *Umphress* that until the Supreme Court decides that prudential ripeness is dead, the Court "continue[s] to recognize the doctrine." 133 F.4th at 468. Accordingly, the government's prudential ripeness arguments have separate independent weight and cannot be dismissed so easily.

This case is the archetypal "abstract disagreement" that federals courts should avoid. By Lewellen's own telling, Pharos is at the cutting edge of cryptocurrency technology, remedying a problem that has thus far eluded even the best of minds. (ROA.21–25.) Lewellen claims to have written software code that can reliably achieve complete privacy for transmitters, securely transmit funds free from the risk of outside manipulation such as hacking, and ensure that funds can be returned if crowdfunded projects do not meet their fundraising goals. *See id*. Lewellen requests a court order stating that his intended business complies with the federal money-transmitting laws. (ROA. 47–48.) Even though Lewellen frames this case as a purely legal question (which it is not) of whether § 1960 requires custodial control for an individual or business to engage in money transmitting, that alone is not determinative.

*See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) ("Although the question presented here is a purely legal one . . . , we nevertheless believe that further factual development would significantly advance our ability to deal with the legal issues presented." (cleaned up)). That is true even if there is some legal risk that may face the challenger. *See id.* at 811 (refuting the argument that "mere uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis" and emphasizing that this logic would result in courts being "overwhelmed with requests for what essentially would be advisory opinions"). Lewellen's generalized concerns about whether the regulatory scheme applicable to money-transmitters would cover his business, without more, does not ripen this case.

Many unanswered questions compel caution. Because there has been no independent analysis of Lewellen's code, it is unclear (1) whether Lewellen's code enables him to identify the transmitters and recipients using Pharos to transmit funds, (2) who Lewellen will sell his Pharos code to, (3) what functionalities will be available on Lewellen's Pharos interface that he hosts, and (4) whether Lewellen would have the capability to institute anti-money laundering controls, know-your-customer processes, customer due diligence and identification processes, or other means to identify and prevent suspicious

activity on his platforms that may contribute to money laundering, terrorism financing, narcotics transactions, or other criminal activity.

Moreover, Lewellen is at least partially responsible for any uncertainty that he faces. Before filing suit, Lewellen did not request an advisory opinion from FinCEN, the regulatory experts with the in-depth knowledge of cryptocurrency and digital assets who could clarify any ambiguities that Lewellen claims to have identified in their prior guidance. *See* 31 C.F.R. § 1010.711 (providing an avenue to submit requests for administrative rulings with FinCEN). While FinCEN may issue advisory opinions, the federal courts do not. And it is not true that "there are no further steps that Lewellen can take without risking liability"; he can engage with FinCEN at any time without risking fines or jail time. (*See* Br. at 32.) Lewellen's failure to present his claim to FinCEN in the first instance provides additional prudential reasons for the federal courts to refrain from opining on this abstract question.[6]

The federal courts have "unique and substantial discretion" in declaratory judgment actions to decide whether to declare the legal rights of

[6] Lewellen argued in the lower court that there is no requirement to exhaust administrative advisory opinion options before a suit of his type can be filed. (ROA.186.) The government is not arguing otherwise, but the Court may still consider how administrative processes affect standing or ripeness analyses. *Cf. Restaino*, 683 F. Supp. 3d at 569–70 (pointing out that the plaintiffs' failure to attempt to apply for silencer registrations undercut any concrete injury, despite their stated intent to make and possess silencers).

the parties. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("There is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action.") (cleaned up); *MedImmune*, 549 U.S. at 136 ("The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so.").

Enjoining the government from enforcing the money transmitting laws against a cryptocurrency business that (1) has not been established in any real operational form, and (2) has not disclosed its code would be impractical and imprudent. The district court properly declined Lewellen's inappropriate invitation to enjoin hypothetical federal prosecutions based on hypothetical software code and hypothetical business models, all while necessarily assuming his hypothetical intent when providing obscuring money-transfer services to his hypothetical customers. This is the archetypical abstract dispute with many procedural and factual hurdles, and therefore it was properly dismissed without prejudice by the district court.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Najib H. Gazi
Assistant United States Attorney
Texas State Bar No. 24131329
Brian W. Stoltz
Assistant United States Attorney
Texas State Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8672
Facsimile: 214.659.8811
najib.gazi@usdoj.gov
brian.stoltz@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF SERVICE

This document is being served through the ECF system on August 31, 2026.

I further certify that (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,818 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney